SALLY GRISWOLD ET AL. *v.* UNION LABOR
LIFE INSURANCE CO.

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued December 8, 1981—decision released March 23, 1982

*David M. Reilly,* for the appellants (plaintiffs).

*Wiggin and Dana,* for the appellee (defendant).

ARTHUR H. HEALEY, J. The plaintiffs have sued on a group health insurance policy issued by the defendant, Union Labor Life Insurance Co., to the Trustees of Local 443 Transportation Health Services and Insurance Plan. The plaintiffs are husband and wife with Sally Griswold an insured dependent under her husband's policy.

On March 5, 1977, Sally Griswold was injured in a one-car accident and, as a result, incurred certain medical and hospital expenses totaling under $5000. At the time of the accident, the plaintiffs maintained no insurance policy or acceptable substitute[1] on their automobile which would provide basic reparations benefits as required by the Connecticut No-Fault Motor Vehicle Insurance statutes. General Statutes §§ 38-319 through 38-351.[2] The plaintiffs sought reimbursement for their expenses, which would have qualified for basic reparations benefits

---

[1] General Statutes § 38-327 (c) provides: "Subject to approval of the insurance commissioner the security required by this chapter may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person to pay basic reparations benefits and the liabilities covered by residual liability insurance and to perform all other obligations imposed by this chapter; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this chapter; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of basic reparations benefits and the liabilities covered by residual liability insurance and all other obligations imposed by this chapter substantially equivalent to those afforded by a policy of insurance that would comply with this chapter. A person who provides security under this subsection is a self-insurer."

[2] General Statutes § 38-320 (a) provides: "The owner's insurer is liable to pay, without regard to fault, basic reparations benefits under a uniform separately identifiable coverage of five thousand dollars per person per accident for economic loss resulting from injury arising out of the ownership, maintenance or use of a private passenger motor vehicle as a motor vehicle, subject to the provisions of this chapter."

under the no-fault statutes, by presenting a claim to the defendant. The defendant denied the claim on the basis that the policy excluded coverage for basic reparations benefits as required by the statutes referred to above. The plaintiffs then brought this action claiming that they were entitled to benefits under the policy and that the defendant had not paid any benefits under the policy despite their demands for payment.

By way of special defense to the plaintiffs' complaint, the defendant claimed that the plaintiffs were required, by statute, to provide security for basic reparations benefits and that, by virtue of their failure to provide such security, they became personally liable for the payment of these expenses. Therefore, pursuant to a policy exclusion (known as a "co-ordination of benefits" or "anti-duplication" clause), the defendant alleged that it was not liable to the plaintiffs for any expenses which would have been otherwise covered by the security for basic reparations benefits as required by statute. After a motion to strike this special defense was denied,[3] the plaintiffs answered the special defense and also alleged that the defendant was bound, under the principles of res judicata and collateral estoppel,

[3] The plaintiffs moved to strike this special defense on August 9, 1978. The court, *Levine, J.*, subsequently denied this motion. On April 12, 1979, the plaintiffs moved to strike two additional special defenses raised by the defendant in response to an amended complaint which alleged unfair trade practices in violation of General Statutes §§ 38-61 and 42-110b. The two special defenses claimed (1) that the plaintiffs did not exhaust their administrative remedies under §§ 38-61 and 38-62 and (2) that since the insurance commissioner had primary jurisdiction over the form of the policy pursuant to § 38-165 and since he had approved the insurance policy in question, the defendant had a complete defense to a claim of unfair trade practices. The court, *DeVita, J.*, denied the plaintiffs' motion on June 26, 1979.

by a Superior Court decision rendered in *Conroy* v. *Union Labor Life Ins. Co.,* 37 Conn. Sup. 117, 442 A.2d 470 (1978). That case held that the same exclusionary language of the same insurance policy as is involved here precluded the defendant from denying benefits to another claimant in the same position as the plaintiff.

The defendant moved for summary judgment on January 24, 1979 and the court, *Celotto, J.,* granted this motion on October 9, 1979. From this judgment, the plaintiffs have appealed.

The defendant's anti-duplication clause, which the court relied upon in granting summary judgment, provides as follows: "1. Effective January 1, 1975, benefits otherwise payable under the Group Policy for Allowable Expenses incurred during a Claims Determination Period shall be reduced to the extent necessary so that the sum of such reduced benefits under all Plans shall not exceed the total of such Allowable Expenses . . . . 2. Definitions: a. 'Plan' refers to any plan providing benefits or services for or by reason of Allowable Expenses, which benefits or services are provided by . . . (iv) any coverage under governmental programs, and any coverage required or provided by any statute, and (v), any group or individual automobile 'No-Fault' insurance policy." The court found that the "defendant's policy clearly states that benefits are to be reduced by coverage required or provided by any statute and any no-fault insurance policy." In support of this, the court relied upon *Neagle* v. *Connecticut Blue Cross, Inc.,* 36 Conn. Sup. 561, 420 A.2d 1169 (1980). In that case, the Appellate Session of the Superior Court held that coverage for any benefits required to be provided under General

Statutes § 38-320 (a) was excluded, without regard to whether any benefits were actually provided, by "an exclusion clause which denied benefits for expenses which were 'paid, payable or required to be provided as Basic Reparations Benefits under Section 38-320 (a) of Connecticut General Statutes or similar benefits under any other no-fault automobile insurance law.' " (Footnote omitted.) Id., 562.

The trial court also stated that the defendant was not bound, under the doctrine of collateral estoppel, by *Conroy*, supra, because to do so would allow the plaintiffs, who were not parties to the *Conroy* case, to use that judgment offensively and in derogation of that doctrine's requirement of mutuality.

We conclude that the trial court erred in its interpretation of the anti-duplication clause and reverse the decision granting summary judgment.

General Statutes § 38-373 (c) (1) (B) states that a health care insurance plan, otherwise providing minimum standard benefits, need not provide benefits for "[a]ny charge for any care for any injury or disease . . . to the extent benefits are payable without regard to fault under a coverage statutorily required to be contained in any motor vehicle or other liability insurance policy or equivalent self-insurance." The major dispute in this matter is whether the language contained in the defendant's anti-duplication clause operates to exclude such benefits.

The plaintiffs claim that the purpose of the anti-duplication clause is to prevent a claimant from multiple recoveries if his expenses are covered by more than one policy. The plaintiffs point to the lower court's interpretation of the same clause

in *Conroy,* supra, where Judge O'Sullivan stated that the clause "does not state that benefits are not payable where, as in the present situation, the claimant did not have 'No-Fault' insurance. The special defenses of the defendants therefore have no legal significance." *Conroy,* supra, 119.

The defendant, on the other hand, argues that the "policy states in clear and unambiguous language that its coverage is secondary to 'any coverage required or provided by any statute.' " The defendant buttresses its argument with the fact that, under General Statutes § 38-327 (e), an owner of a private passenger motor vehicle who does not maintain the required insurance or acceptable substitute shall be personally liable for the payment of basic reparations benefits and shall also have all of the rights and obligations of an insurer. Under § 38-320 (a), the owner's insurer is liable for the payment of basic reparations benefits, without regard to fault, up to $5000 per person per accident.

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. See, e.g., *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 509–10, 363 A.2d 1055 [1975]; *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 622, 220 A.2d 32 [1966]. 'The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy.' *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 283, 278 A.2d 796 [1971]. If the terms of the policy are clear and unambiguous, then the ' "language, from which the intention of the parties is to be deduced, must be accorded its natural and ordi-

nary meaning." ' *Weingarten* v. *Allstate Ins. Co.,* supra, 509. However, ' [w]hen the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted.' *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 Williston, Contracts (3d Ed.) § 621.

"This rule—that the construction most favorable to the insured be adopted—'rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted.' *Roby* v. *Connecticut General Life Ins. Co.,* 166 Conn. 395, 402, 349 A.2d 838 [1974]. The rule itself derives from the established principle of contract construction that, where the terms of a contract are equally susceptible to two different meanings, that favoring the party who did not draw up the contract will be applied. 'The premise operating behind the rule would seem to be a psychological one. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests.' *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 146 n.8, 328 A.2d 711 [1973]. A further, related rationale for the rule is that '[s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter.' 4 Williston, op. cit. § 621, p. 760." *Simses* v. *North American Co. for Life & Health Ins.,* 175 Conn. 77, 84–85, 394 A.2d 710 (1978). "Courts follow that rule because the insurance company's

attorneys, officers, or agents prepare the policy and it is their language that must be interpreted. *Scranton* v. *Hartford Fire Ins. Co.*, 141 Conn. 313, 316, 105 A.2d 780 [1954]; *King* v. *Travelers Ins. Co.* [123 Conn. 1, 4, 192 A. 311 (1937)]; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 424, 172 A. 777 [1934]; *Westmoreland* v. *General Accident F. & L. Assurance Corporation*, 144 Conn. 265, 274, 129 A.2d 623 [1957] *(Daly, J.,* dissenting)." *Griffith* v. *Security Ins. Co.*, 167 Conn. 450, 460–61, 356 A.2d 94 (1975) *(Bogdanski, J.,* dissenting).

We cannot say that the clause in question is clear and unambiguous. Upon reading the anti-duplication clause as it has been written by the authors of the contract, we cannot say with any degree of certainty whether it was intended to exclude not only monies or benefits actually received but also those capable of being received under any coverage required or provided by any statute or no-fault insurance policy. As we have already noted, where the terms are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted. Moreover, "this rule of construction favorable to the insured extends to exclusion clauses. *Muller* v. *Sun Indemnity Co.*, 276 App. Div. 1028, 1029, 96 N.Y.S.2d 140 [1950], aff'd, 302 N.Y. 634, 97 N.E.2d 760 [1951]." *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, 143 Conn. 510, 513, 123 A.2d 755 (1956). Therefore, the interpretation which sustains the claim must be adopted. See *Raffel* v. *Travelers Indemnity Co.*, supra.

The salient language of the anti-duplication clause provides that "benefits otherwise payable under the Group Policy for Allowable Expenses . . .

shall be reduced to the extent necessary so that the *sum of such reduced benefits* under all Plans shall not exceed the total of such Allowable Expenses." (Emphasis added.) The term "Plan" refers to any coverage required or provided by any statute and any no-fault insurance policy. The defendant's use of the phrase "sum of such reduced benefits"[4] implies that only amounts of money actually received by an insured are to be added together. This does not include amounts of money which would have been received had the plaintiffs had other insurance, whether required by statute or not. Even though the term "Plan" is defined, in the policy, to include no-fault and other statutorily required insurance, it is the word "sum" which requires that benefits actually be paid to an insured before the defendant may avoid duplicating that payment. We must agree with the interpretation in the *Conroy* case, supra, that this policy simply does not say that benefits are not payable where a claimant is not covered by no-fault insurance. Since the intent of the parties as to what coverage the plaintiffs expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy; see *Marcolini* v. *Allstate Ins. Co.*, supra, 283; was to prevent the duplication of benefits, our interpretation of this clause is consistent with this intent under these circumstances, i.e., where a claimant does not have a no-fault policy[5] and receives no payment from any other source for

---

[4] "Sum" is defined as "an indefinite or specified amount of money . . . the aggregate of two or more numbers, magnitudes, quantities or particulars . . . ." Webster, Third New International Dictionary.

[5] This is not to say that the defendant could not modify or amend the policy to exclude coverage in a situation where the claimant does not maintain no-fault insurance or some acceptable substitute. See *Neagle* v. *Connecticut Blue Cross, Inc.*, 36 Conn. Sup. 561, 420 A.2d 1169 (1980).

basic reparations benefits. In this case, the defendant's policy was the primary source of insurance for the plaintiff and no duplication occurred.[6]

We do not find *Neagle* v. *Connecticut Blue Cross, Inc.,* supra, to be a persuasive precedent here. In that case, the exclusion clause was much more specific than the anti-duplication clause in this case. It provided for an exclusion of benefits for expenses which were "paid, payable or required to be provided as Basic Reparations Benefits under Section 38-320 (a) of Connecticut General Statutes or similar benefits under any other no-fault automobile insurance law." Id., 562. This clause does not imply that benefits must actually be paid because the qualifying term, "sum," is absent from the phrase "paid, payable or required to be provided . . . ." Also, the exclusion clause in *Neagle* contains the term "payable" while a similar term is absent from the exclusionary language of the present anti-dupli-

---

[6] We reject the argument that our interpretation rewards a person who has failed to provide the mandatory security as required under General Statutes § 38-327 (a). The legislature had addressed this issue by deeming it a misdemeanor to operate a private passenger motor vehicle without the mandatory security. General Statutes § 38-327 (d). "Nowhere in the statute, however, is [a person who has failed to provide the mandatory security] precluded from recovering benefits under the statute. We will not impose . . . a penalty which the Legislature has deemed it unnecessary to provide. If an undue burden is thereby imposed upon premium-paying vehicle owners, the remedy lies with the Legislature." *Hayes* v. *Erie Ins. Exchange,* 261 Pa. Super. 171, 175, 395 A.2d 1370 (1978); see *Ward* v. *Nationwide Mutual Fire Ins. Co.,* 364 So. 2d 73, 78 (Fla. App. 1978); *Ortiz* v. *Safeco Ins. Co.,* 136 N.J. Super. 532, 535, 347 A.2d 26 (1975), modified, *Ortiz* v. *Safeco Ins. Co.,* 144 N.J. Super. 506, 366 A.2d 695 (1976); *Singer* v. *Nationwide Ins. Co.,* 274 Pa. Super. 359, 361, 418 A.2d 446 (1980). "[A]s between plaintiffs and defendants, there is nothing unfair in requiring defendants to make payment of benefits which they have contracted to pay under coverage for which they have been paid a premium." *Ward* v. *Nationwide Mutual Fire Ins. Co.,* supra, 78.

cation clause. See *St. Alexius Hospital* v. *Eckert,* 284 N.W.2d 441, 447 (N.D. 1979). The word "payable" clearly connotes that something need only be capable of being paid. In fact, the defendant's use of the term "payable" in its own clause refers not to benefits to be excluded but, instead, to "benefits otherwise payable" under the group policy itself. The defendant's careful and selective usage of terms; see *Simses* v. *North American Co. for Life & Health Ins.,* supra, 84; *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 378, 125 A. 866 (1924); *Boon* v. *Aetna Ins. Co.,* 40 Conn. 575, 585–86 (1874); constrains us to hold that "benefits otherwise payable" under its policy shall only be reduced by the "sum" of the benefits actually received under "any coverage required or provided by any statute" or "No-Fault" insurance policy.[7]

"Since there was a genuine issue of material fact between the parties; Practice Book § 384; *Rusco Industries, Inc.* v. *Hartford Housing Authority,* 168 Conn. 1, 5–6, 357 A.2d 484 (1975); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 378–80, 260 A.2d 596 (1969); the case was not ready to be resolved by summary judgment." *William Pitt, Inc.* v. *Taylor,* 186 Conn. 82, 85, 438 A.2d 1206 (1982). The plaintiffs are entitled to coverage pur-

[7] For other examples of effective exclusion clauses in a slightly different situation, see *Bailey* v. *Interinsurance Exchange of the Automobile Club of Southern California,* 49 Cal. App. 3d 399, 122 Cal. Rptr. 508 (1975); *Leigh* v. *Country Mutual Ins. Cos.,* 27 Ill. App. 3d 194, 326 N.E.2d 203 (1975); *Kerry* v. *State Farm Mutual Auto Ins. Co.,* 60 Ohio App. 2d 8, 395 N.E.2d 375 (1978); *Romanus* v. *Blue Cross & Blue Shield of South Carolina,* 271 S.C. 164, 246 S.E.2d 97 (1978); *State Farm Mutual Automobile Ins. Co.* v. *Rice,* 205 Tenn. 344, 326 S.W.2d 490 (1959); *Williams* v. *Employers Mutual Casualty Co.,* 368 S.W.2d 122 (Tex. 1963); *Milliron* v. *United Benefit Life Ins. Co.,* 18 Wash. App. 68, 566 P.2d 582 (1977); annot., 40 A.L.R. 3d 1012, 1027 § 7.

suant to this policy if they can demonstrate that they otherwise qualify under the terms and conditions contained therein.[8]

We now reach the plaintiffs' claim that the court erred in refusing to strike the defendant's second special defense[9] which alleged that the plaintiffs could not maintain an action claiming damages resulting from alleged unfair trade practices, pursuant to General Statutes § 38-60 et seq., because the plaintiffs had not exhausted their administrative remedies.

The plaintiffs claim (1) that General Statutes § 38-62 (d)[10] specifically allows a separate private action claiming damages for alleged violations of § 38-60 and (2) that since the administrative remedies of § 38-62 do not allow the insurance commissioner to award damages, there is no administrative remedy to exhaust. The defendant claims that since the plaintiffs allege a violation of § 38-61 et seq., they must first exhaust their administrative remedies provided under § 38-62 before instituting a private action for damages.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists,

[8] We note from the pleadings that a number of material facts alleged were denied by the defendant in its answer.

[9] The motion to strike; Practice Book § 151; is the equivalent of the demurrer in the old form of practice. See Practice Book, 1963, § 105. We have stated that the overruling of a demurrer can be assigned as error when appealing from a final judgment. *Nowak* v. *Nowak,* 175 Conn. 112, 117, 394 A.2d 716 (1978); *Cottrell* v. *Connecticut Bank & Trust Co.,* 168 Conn. 119, 120, 358 A.2d 356 (1975).

[10] General Statutes § 38-62 (d) provides: "No order of the commissioner under sections 38-60 to 38-64, inclusive, shall relieve or absolve any person affected by such order from any liability under any other laws of this state."

it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 358–59, 377 A.2d 1099 (1977); *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 282, 362 A.2d 1354 (1975); see 3 Davis, Administrative Law § 20.01 . . . ." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979). Courts will not, however, require exhaustion of an administrative remedy when that remedy is either inadequate or futile. See *Conto* v. *Zoning Commission,* 186 Conn. 106, 115, 439 A.2d 441 (1982); *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* supra; *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979); *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 282, 362 A.2d 1354 (1975); *Scoville* v. *Ronalter,* 162 Conn. 67, 74, 291 A.2d 222 (1971); *Bianco* v. *Darien,* 157 Conn. 548, 554, 254 A.2d 898 (1969). "We must examine the complaint to determine whether the plaintiffs were required to exhaust an administrative remedy before the Superior Court could entertain this action. Whether prior recourse to the agency will be required will depend on the injury alleged and the administrative remedy available. We examine first that portion of the complaint supporting the prayer for declaratory relief." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* supra, 588–89.

The plaintiffs' second count in their amended complaint seeks monetary damages, attorneys' fees, costs and punitive damages for alleged unfair trade practices in violation of General Statutes §§ 42-110b,[11] 38-61 (1), 38-61 (6) (a), (d), (f), (g),

[11] Even though the plaintiffs allege unfair trade practices under § 42-110b and § 38-60 et seq., the exhaustion of the administrative remedy issue is only presented in the briefs as to § 38-60 et seq.

(h) and (m). Under General Statutes § 38-60, no person shall engage in any trade practice which is defined or determined to be an unfair or deceptive act or practice in the business of insurance. Unfair and deceptive acts or practices are defined in § 38-61 and include misrepresentations and false advertising of insurance policies; General Statutes § 38-61 (1); and unfair claim settlement practices. General Statutes § 38-61 (6). Under § 38-62, the insurance commissioner is authorized to institute administrative proceedings against anyone who he has reason to believe has been engaged or is engaging in any unfair or deceptive act or practice as defined above. The commissioner may hold a hearing on the charges, in compliance with § 38-62 (a), and may (1) serve a cease and desist notice to such person or (2) order the payment of a monetary penalty or (3) order the suspension or revocation of the person's license; § 38-62 (b); or any combination of the three. The pertinent statutes do not authorize the commissioner to award damages to an aggrieved person nor does he have the authority to determine a private right to damages.

It appears, therefore, that the plaintiffs had no practical or adequate adminstrative remedy which would require exhaustion. See *Kosinski* v. *Lawlor,* supra, 425; *Bianco* v. *Darien,* supra, 555. The plaintiffs are entitled to maintain a private right of action for monetary damages for alleged unfair trade practices, as defined by § 38-61, without first

---

Nothing we say today bears on the issue of what, if any, administrative remedies must first be exhausted under § 42-110a et seq., before a private action for damages can be brought under those statutes. This issue has not been briefed by the parties and is therefore deemed abandoned. See *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 69–70, 381 A.2d 559 (1977).

exhausting the administrative remedies under § 38-62 and it was error for the court to hold otherwise.[12]

In light of our holding, we need not reach the issue of whether the defendant was bound, under the doctrine of collateral estoppel, by the *Conroy* case, supra.

There is error, the case is remanded to the trial court for proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.

---

[12] In view of our conclusion, we need not determine whether a similar action for damages is specifically authorized by § 38-62 (d).