[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT #114 DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT #115.50 CT Page 2054
The plaintiff, Heyman Associates No. 1, a general partnership in the business of owning and operating commercial real estate, filed a six-count complaint on June 21, 1991, seeking to obtain, inter alia, insurance coverage for the expenses and liabilities that it incurred as a result of a fuel oil spill. The complaint names as defendants the Insurance Company of the State of Pennsylvania (ISOP) and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National).
The following allegations are taken from the plaintiff's affidavits. On April 15, 1989, the plaintiff obtained a primary comprehensive general liability and property insurance policy from ISOP, and a comprehensive umbrella general liability insurance policy from National. On January 29, 1991, while these insurance policies were in effect, the United States Coast Guard discovered that a large quantity of fuel oil had leaked from the plaintiff's Stamford property into Stamford Harbor. The source of the leak was a broken pipe which served a heating system on the plaintiff's property. As a result of the leak, various government agencies demanded that the plaintiff pay for the clean-up procedures. The plaintiff acknowledged its liability, and then it reported the incident to the defendants on February 14, 1991 and April 19, 1991.
The plaintiff alleges that its expenses and liabilities are covered by either one or both of the defendants' insurance policies, and that it has complied with all conditions precedent under the policies. The plaintiff further alleges that the defendants subsequently denied coverage for the incident based on an "absolute pollution exclusion" contained in the policies.
In the first count, the plaintiff alleges that the defendants' insurance policies provide coverage for property damage claims (such as the claims that the plaintiff has paid and will continue to pay as a result of the fuel oil spill) and the defendants have failed to accept their obligations CT Page 2055 under the policies. In the second count, the plaintiff claims that the defendants waived any defenses to coverage that they may have had because they failed to provide the plaintiff with timely notice of their denial of coverage. In the third count, the plaintiff alleges that National violated the common law and General Statutes 38a-321, because of its "wrongful attempts to alter and cancel the plaintiff's insurance policy after the plaintiff notified National of its claim." In the fourth count, the plaintiff alleges that the defendants' conduct violated General Statutes 38a-815 and38a-816(6) of the Connecticut Unfair Insurance Practices Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes 42a-110 et seq. In the fifth count, the plaintiff alleges that the defendants' conduct violated General Statutes 38a-815 and 38a-816(1) and (2) (CUIPA) and 42a-110 et seq. (CUTPA). In the sixth count, the plaintiff alleges that the defendants breached their duty of good faith and fair dealing.
The defendants filed an answer to the plaintiff's complaint, along with thirty-five "affirmative defenses" on September 3, 1991. The plaintiff filed its reply on November 13, 1991.
On October 1, 1991, the plaintiff filed a motion for partial summary judgment (#114) as to the first and second counts, and as to the CUTPA and CUIPA claims against National (contained in the fourth and fifth counts), along with a memorandum of law (#115) and the affidavits of James Mazzeo (the plaintiff's chief financial officer) and Kathy Rorick (the plaintiff's director of real estate). On October 28, 1991, the defendants filed a cross-motion for summary judgment (#115.50) on the first and second counts, and on the CUTPA and CUIPA claims against National, along with a memorandum of law (#115.75). The file also contains the following supplemental briefs: the plaintiff's reply memorandum of law (#121, filed December 6, 1991); the defendants' reply memorandum #122, filed January 3, 1992); and the plaintiff's supplemental brief (#128), filed on September 29, 1992).
Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to CT Page 2056 judgment as a matter of law." Lees v. Middlesex Insurance Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. Mingachos v. CBS, Inc., 196 Conn. 91,111, 491 A.2d 368 (1985). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the parent's affidavits and documents." Connecticut National Bank v. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1298
(1990).
A. THE ABSOLUTE POLLUTION EXCLUSION AND THE INSURERS' DUTY TO DEFEND AND INDEMNIFY: COUNT ONE
In support of its motion for summary judgment, and in opposition to the defendants' cross-motion for summary judgment, the plaintiff argues that the defendants are obligated to indemnify the plaintiff for the costs that the plaintiff incurred, or will incur, in cleaning up the pollution incident because: (1) the pollution exclusion clauses in the defendants' policies are not absolute exclusions; (2) the pollution exclusion clauses are ambiguous and should be interpreted so that they provide coverage; (3) the pollution exclusions are ambiguous because the defendants should have specifically included "fuel oil" in the policy exclusion; and (4) the pollution exclusion clause does not apply to fuel oil products because oil is not defined as a pollutant under the applicable federal and state laws. The plaintiff also contends that it should be allowed to conduct more discovery so that they could reveal latent ambiguities which should be construed in favor of coverage.
In response to the plaintiff's motion and in support of their cross-motion for summary judgment, the defendants argue that the pollution exclusions contained in their policies are unambiguous and are "absolute", in that they preclude coverage for property damages caused by pollutants. The plaintiff also argues that oil is defined as a pollutant under the relevant federal and state laws.
1. Is The Oil Spill A Pollution Incident?
General Statutes 22a-448 provides in pertinent part: CT Page 2057
 Sec. 22a-448. (Formerly Sec. 25-54bb). Pollution by chemical liquid, hazardous waste, oil or petroleum, waste oil or solid, liquid or gaseous products: Definitions. For the purposes of sections 22a-133aa to 22a-133j, inclusive, sections 22a-448 to 22a-454, inclusive, sections 22a-448 to 22a-454, inclusive, and section 22a-457a:
 (4) "Oil or petroleum" means oil or petroleum of any kind or in any form including but not limited to waste oils and distillation products such as fuel oil, kerosene, naptha, gasoline and benzene, or their vapors;
General Statutes 22a-451 provides in pertinent part:
 Sec. 22a-451. (Formerly Sec. 25-54ee). Liability for pollution, contamination or emergency. Emergency spill response fund. (a) Any person, firm or corporation which directly or indirectly causes pollution and contamination of any land or waters of the state or causes an emergency through the charge, spillage, uncontrolled loss, see page or filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes or which owns any hazardous wastes deemed by the commissioner to be a potential threat to human health or the environment and removed by the commissioner shall be liable for all costs and expenses incurred in investigating, containing, removing, monitoring or mitigating such pollution and contamination, emergency or hazardous waste, and legal expenses and court costs incurred in such recovery . . . .
(Emphasis added). General Statutes 22a-423 (the Water Pollution Control Act) defines pollution as the:
 harmful thermal effect on the contamination or rendering unclean or impure or prejudicial to public health of any waters of the State by reason of any wastes or other material discharged or deposited therein by any public or private CT Page 2058 sewer or otherwise so as to directly or indirectly come into contact with any waters.
The Oil Pollution Act of 1990, 33 U.S.C. § 2701 (1990), provides that:
 (23) "oil" means oil of any kind or in any form, including, but not limited to petroleum, fuel oil, sludge, oil refusee, and oil mixed with wastes other than dredged spoil, but does not include petroleum, including crude oil or any fraction thereof, which is specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601) and which is subject to the provisions of that Act [42 U.S.C.A. 9601 et seq.];
Section 2702(a) of the Oil Pollution Act provides that:
 Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines of the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.
Other courts have also recognized that oil is a pollutant when it is introduced into waterways. See United States v. Standard Oil Co., 384 U.S. 224, 226,86 S.Ct. 1427, 1428, 16 L.Ed.2d 492 (1966); Guilford Industries, Inc. v. Liberty Mutual Ins. Co., 688 F. Sup. 792, 794 (D.Me. 1988).
Because Connecticut and the federal government have characterized the discharge of oil into bodies of water as "pollution", the court treats the escape of oil from the plaintiff's property into Stamford Harbor as "pollution" for purposes of interpreting the parties' insurance contracts.
2. Interpretation of The Absolute Pollution Exclusion Clauses CT Page 2059
"It is the function of the court to construe the provisions of the contract of insurance." Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." (Citations omitted). Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 583, 573 A.2d 699 (1990). "If the words in the policy are plain and unambiguous, the established rules for the construction of contracts apply, [and] the language from which the intention of the parties is to be deduced must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citation omitted). Id. Where the terms of an insurance policy are ambiguous, "the construction most favorable to the insured will be adopted." (Citation omitted). Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 514, 442 A.2d 920 (1982). However, "a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citation omitted). Hammer v. Lumberman's Mutual Casualty Co., supra, 584.
The pollution exclusion clause contained in defendant ISOP's policy provides that:
[This insurance does not apply].
 (1) to "bodily injury" or "property damage" arising out of the alleged or threatened discharge, dispersal, release or escape of pollutants;
(a) at or from premises you own, rent or occupy;
 (b) at or from any site or location used by or for your others for the handling, storage, disposal, processing or treatment or waste material;
 (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization CT Page 2060 for whom you may be legally responsible; or
 (i) to test for, monitor clean up, remove, contain, treat, detoxify, or neutralize the pollutants, or
 (ii) if the pollutants are brought on or to the site or location by or for you.
 (2) any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
 Pollutants means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.
"CONTAMINATION/POLLUTION AMENDMENT"
It is understood and agreed that this policy does not cover any loss damage or expense caused by contamination or pollution, whether or not brought about by a peril otherwise incurred. Contamination or pollution is defined as, loss, damages, or expense caused by gas(es), liquid(s), solid(s), or radioactive material which may be harmful to human health or the environment.
The pollution exclusion clause contained in defendant National's policy provides that:
 In consideration of the premium paid, and notwithstanding anything contained in this policy to the contrary, it is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:
(1) to "personal injury" or "property damage" arising out of the actual, alleged or threatened discharge. CT Page 2061 dispersal, release or escape of pollutants:
 (a) at or from premises you currently own, rent or occupy or that you formerly owned, rented or occupied;
 (b) at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste material.
 (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or
 (d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations;
 (i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants, or
 (ii) if the pollutants are brought on or to the site or location by or for you.
Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
"Provisions in insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner not inconsistent with statutory forms or provisions or contrary to public policy." (Citation omitted). Hammer v. Lumberman's Mutual Casualty Co., supra, 588. "[T]he word `exclusion' signifies . . . circumstances in which the insurance company will not assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy." (Citation omitted). Id., 589. CT Page 2062
While there are no reported decisions by Connecticut courts which interpret the absolute pollution exclusion, in Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118
(2d Cir. 1990), the court concluded that "because the plain meaning of the [absolute pollution exclusion] precludes coverage for the oil spill, [the insurer] was entitled to disclaim liability." Id., 122. The majority of courts in other jurisdictions that have ruled on the absolute pollution exclusion have found it to be valid, clear and unambiguous. See Bureau of Engraving v. Federal Ins. Co., 793 F. Sup. 209,211-12 (D.Minn. 1992); Park-Ohio Industries, Inc. v. Home Indemnity Co., 785 F. Sup. 670, 674 (N.D.Ohio 1991); Smith v. Hughes v. Aircraft Co. Corp., 783 F. Sup. 1222,1229 (D.Ariz. 1991); Alcolac, Inc. v. California Union Ins. Co., 716 F. Sup. 1546, 1549 (D.Md. 1989); Guilford Industries, Inc. v. Liberty Mutual Ins. Co., 688 F. Sup. 792,794-95 (D.Me. 1988); League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 422 (Minn.App. 1989); Budofsky v. Hartford Ins. Co., 147 Misc.2d 691,536 N.Y.S.2d 438, 440 (Sup.Ct. 1990).[1]
There are two reported decisions in which the absolute pollution exclusion was found to be ambiguous. In West American Ins. v. Tufco Flooring, 104 N.C. App. 312,409 S.E.2d 692 (1991), the court ruled that the pollution exclusion created an ambiguity as to whether the insurance policy in question provided coverage for the insured because it conflicted with a "completed operations" clause in the policy. Id., 697. Thus, the ambiguity created by the policy was resolved in favor of coverage for the insured. Id. The holding in West American Ins. would not apply to the present case because the plaintiff does not claim that the defendants' pollution exclusions conflict with other clauses contained in the policies.
In Westchester Fire Insurance Co. v. City of Pittsburgh, Kansas, 794 F. Sup. 353 (D.Kan. 1992), the court ruled that "lack of precision in the definition of pollutants renders the entire exclusion ambiguous." Id., 355. In Westchester Fire Insurance Co. v. City of Pittsburgh, Kansas,768 F. Sup. 1463 (D.Kan. 1991), the same court ruled that the pollution exclusion clause was overbroad because:
under a broad interpretation of the definition CT Page 2063 of pollution almost any function . . . could be characterized as `polluting' . . . . [T]here is virtually no substance or chemical in existence that would not irritate or damage some person or property . . . . The terms `irritant' and `contaminant' . . . cannot be read in isolation, but must be construed as substances generally recognized as polluting the environment.
Id., 1470. Even under the minority position, it is questionable whether a court would conclude that the pollution exclusion was overbroad if it were dealing with an oil spill, which is recognized as an environmental pollution incident.
While a minority view exists which considers the pollution exclusion to be overbroad, in Guilford Industries Inc. v. Liberty Mutual Ins. Co., supra, 792, a case which adopts the majority rule, the court, in dealing with the problem of overbreadth, noted that:
 The language of the exclusion, while broad, is plainly not meant to be viewed in isolation. [W]hile almost any substance might fall within the exclusion, . . . it can only do so in certain very precisely drawn circumstances: if it is an irritant or dontaminant. The provision is, therefore, far from all-inclusive or meaningless.
(Emphasis added). Id., 794.
The plain language of the defendants' absolute pollution exclusion clauses unambiguously disclaims liability for all types of pollution incidents, and the oil leak which emanated from the plaintiff's property is clearly the type of pollution incident that the defendants intended to exclude from coverage. Accordingly, based on the terms of the absolute pollution exclusion, the plaintiff could not reasonably conclude that it was covered for the oil leak, as the natural and ordinary meaning of the words used in the exclusion clearly and unambiguously eliminated coverage for losses caused by pollution incidents.
3. Duty To Defend CT Page 2064
"It is axiomatic that no insurer is bound to provide indemnification or defense beyond the scope of the coverage described in the [insurance policy]." (Citations omitted). Plasticrete Corporation v. American Policyholders Ins. Co.,184 Conn. 231, 235-36, 439 A.2d 968 (1981). Where there is no potential of liability under a policy exclusion, there is no duty to defend. Park-Ohio Industries, Inc. v. Home Indemnity Co., supra, 674-75; Hydro Systems, Inc. v. Continental Ins. Co., 717 F. Sup. 700, 703 (C.D.Cal. 1989).
The defendants have no potential liability to the plaintiff because of the absolute pollution exclusions contained in the parties' insurance policies. Therefore, the defendants have no duty to defend on behalf of the plaintiff.
4. Plaintiff's Request For Additional Discovery
In Alcolac, Inc. v. California Union Ins. Co., supra, 1546, the plaintiff argues that it was not afforded a meaningful opportunity for discovery (pursuant to FRCP56(f)). The court ruled that:
 There is no need to engage in discovery in a coverage suit when the relevant policies are either in the insured's possession or were directed by the court to be turned over to the insured . . . . The court will not allow the taking of depositions or other discovery in an attempt to generate ambiguity where none exists . . . .
Id., 1548. Thus, the court denies the plaintiff's request for additional discovery.
5. Conclusion As To The First Count
The plaintiff's motion for summary judgment on the first count is denied, and the defendants' cross-motion for summary judgment on the first count is granted, as there are no genuine issues of material fact concerning the defendants' absolute pollution exclusions, and judgment as a matter of law may be entered in favor of the defendants because: (1) the pollution exclusions are clear and unambiguous; (2) the pollution exclusions are absolute; and (3) oil leaking into waterways is defined as pollution by the pertinent federal and state statutes. CT Page 2065
B. WAIVER: SECOND COUNT
In support of its motion for summary judgment (and in opposition to the defendants' cross-motion for summary judgment), the plaintiff argues that the defendants' denial of coverage was untimely and, as a result, they waived their rights to rely on the absolute pollution exclusions contained within their respective insurance policies. In response to the plaintiff's motion (and in support of their cross-motion), the defendants argue that they denied the plaintiff's claim in a timely manner. The defendants also argue that waiver cannot be used to create insurance coverage for and a duty to defend against those events that are expressly excluded from coverage by language contained in the policy.
The relevant facts are as follows. On February 1, 1991, the U.S. Coast Guard informed the plaintiff of its liability for the clean-up costs associated with the oil leak. (Affidavit of Rorick, para. 4). The plaintiff notified defendant ISOP of its claim against the ISOP policy on February 14, 1991. (Affidavit of Mazzeo, para. 5). ISOP responded by letters dated March 5, 1991 and March 18, 1991, stating that it had not reviewed the policy, and requesting additional information from the plaintiff. In the interim, ISOP "ignored" the plaintiff's requests for a statement as to whether the plaintiff was covered under the policy for the clean-up costs. (Id., para. 8). On March 13, 1991, ISOP denied the plaintiff's claim based on the absolute pollution exclusion contained in the parties' insurance policy. (Id., para. 9).
The plaintiff notified defendant National of its claim against the National policy on April 19, 1991. (Affidavit of Mazzeo, para. 14). On May 8, 1991, National sent the plaintiff a notice of cancellation. (Id., para. 16). On June 10, 1991, National denied the plaintiff's claim based on the absolute pollution exclusion contained in the parties' insurance policy. (Id., para. 18).
In order to prove waiver, the plaintiff must show that the defendants "engaged in conduct that may reasonably be found to have constituted [an] intentional relinquishment of a known right." (Citations omitted). Olean v. Treglia, 190 Conn. 756, CT Page 2066 772, 463 A.2d 242 (1983). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." Novella v. Hartford Acc. Indemnity Co., 163 Conn. 552, 562, 316 A.2d 394 (1972). "Implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable." Id., 564.
 The essential elements of estoppel are that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury . . . .
(Citations omitted). Hanover Insurance v. Fireman's Fund Ins., 217 Conn. 340, 351. 586 A.2d 567 (1990). "An insurer must state its position clearly and in a timely manner in order to preserve its defenses under the policy." J. Appleman, insurance Law and Practice 4694 (1979). A limitation upon the use of waiver in the insurance context is that it is "not available, as a rule, to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." 44 Am.Jur.2d Insurance 1577 (1982).
 The courts of most jurisdictions agree that [waiver and estoppel] are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof.
1 ALR 3d 1144 (Supp. 1991), citing Breen v. Aetna Casualty 
Surety Co., 153 Conn. 663, 220 A.2d 709 (1965). "[T]he doctrine of waiver should not be applied to exclusions since they are not conditions of the insurer's promises (see Corbin, Contracts, p. 706 [1952]) but a declaration that no promise is being made with respect to the circumstances CT Page 2067 detailed in the exclusion." (Citations omitted). Bouchard v. Travelers Indemnity Co., 28 Conn. Sup. 122, 124-25,253 A.2d 497 (Super.Ct. 1969).
Since the plaintiff's claim is barred by the defendants' pollution exclusion clauses, the plaintiff, as a matter of law, should not be allowed to use the remedies of waiver and estoppel to create coverage where none exists. Accordingly, there are no genuine issues of material fact and the plaintiff's motion for summary judgment on the third count is denied, and the defendants' cross-motion for summary judgment on the third count is granted.
C. PLAINTIFF'S CUTPA AND CUIPA CLAIMS AGAINST NATIONAL:
FOURTH AND FIFTH COUNTS
In the fourth and fifth counts of its complaint, the plaintiff alleges that the defendants' conduct in denying coverage under the insurance policies amounts to a violation of General Statutes 38a-815 and 38a-816 (CUIPA) and General Statutes 42a-110 et seq. (CUTPA). In support of its motion for summary judgment, and in opposition to the defendants' cross-motion for summary judgment, the plaintiff argues that National refused to provide the plaintiff with a copy of the policy despite the plaintiff's repeated requests, and that National wrongfully sent the plaintiff a notice of cancellation on the "false grounds" of nonpayment of premiums after it had received notice of the plaintiff's claim against the policy. The plaintiff also argues that National's conduct constitutes "unfair or deceptive acts" in the conduct of its business.
In response to the plaintiff's motion, and in support of their cross-motion for summary judgment, the defendants argue that the plaintiff fails to prove that National made misrepresentation which induced either a lapse or forfeiture of the plaintiff's insurance policy, as the policy was in effect at all times, and the plaintiff's claim was denied based on the absolute pollution exclusion contained in the National policy. The defendants also argue that the plaintiff fails to offer evidence of its "repeated requests" for a copy of the policy in question.
General Statutes 38a-815 provides, in part, that "[n]o CT Page 2068 person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance . . . ."
General Statutes 38a-816 defines unfair methods of competition and unfair and deceptive acts or practices in the business of insurance as "misrepresentations and false advertising of insurance policies; false information and advertising generally; defamation; boycott, coercion and intimidation; false financial statements; unfair claim settlement practices; failure to maintain complaint handling procedures; misrepresentation in insurance applications." Section 38a-816(6) provides in pertinent part:
 (6) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (b) failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies; (c) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . .
"CUIPA does not expressly create a private right of action." Scheer v. Chubb Son, Inc., 9 Conn. Law Trib. No. 17, p. 13, 16 (D.Conn., December 14, 1982, Burns, J.). While the Supreme Court has held that a violation of CUIPA may be actionable as an unfair trade practice; see Mead v. Burns, 199 Conn. 651, 663, 509 A.2d 11 (1986); it has expressly declined to rule on the question of whether an individual may maintain a private cause of action for damages under CUIPA alone. See id., 657 n. 5; Griswold v. Union Labor Life Insurance Co., 186 Conn. 507, 512 n. 12 CT Page 2069 (1982). However, other lower courts have recognized a private right of action under CUIPA itself. See Sambuco v. Aetna Casualty Surety Co., 2 Conn. L. Rptr. 520, 521 (October 2, 1990, Hammer, J.); Thompson v. Aetna Life 
Casualty Co., 2 CSCR 648, 649 (May 15, 1987, Satter, J.). However, if the CUIPA action is based on a violation of General Statutes 38a-816(6) (formerly 38-61(6), unfair claim settlement practices, the plaintiff must allege that the defendant engaged in the wrongful conduct "with such frequency as to indicate a general business of practice." Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669, ___ A.2d ___ (1992). See also Cole v. Metropolitan Property Liability Insurance Co., 10 Conn. Law Trib. No. 45, p. 7 (D.Conn., June 13, 1984, Burns, J.) (holding that where a CUIPA violation is based on General Statutes 38-61(6), the plaintiff must allege the commission of acts relative to more than just his claims alone).
A plaintiff may bring a cause of action under CUTPA for a violation of CUIPA. Mead v. Burns, supra, 663. If the violation of CUIPA is an unfair claims settlement practice, General Statutes 38a-816(6), the plaintiff must prove that the defendant committed the acts with such frequency as to indicate a general business practice. Id., 660. A plaintiff may not bring a cause of action under CUTPA which does not violate CUIPA where the alleged misconduct is related to the insurance industry. Id., 663-66.
 In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice without necessarily having been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businessmen."
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243,254, 550 A.2d 1061 (1988); Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355, 525 A.2d 57
CT Page 2070 (1987); Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747,756, 474 A.2d 780 (1984); Conaway v. Prestia, 191 Conn. 484,492-93, 461 A.2d 847 (1983).
The following facts are relevant to the CUIPA and CUTPA issues. On April 19, 1991, the plaintiff notified National of its intent to file a claim against the National policy, based on the January 1991 pollution incident. (Affidavit of Mazzeo, para. 14). On May 8, 1991, the plaintiff received a notice of cancellation for nonpayment of premiums from National. (Id., para. 16). National claims that on May 16, 1991, in response to the plaintiff's protestations regarding the notice of cancellation, it informed the plaintiff that the policy was extended by endorsement. (National does not submit an affidavit or other documentary evidence regarding this allegation. However, these allegations are corroborated in paragraphs five through ten of James Mazzeo's third affidavit, submitted by the plaintiff). On June 10, 1991, National denied the plaintiff's claim based on the absolute pollution exclusion contained in the parties' insurance policy. (Affidavit of James Mazzeo, para. 18).
The undisputed facts stated in the plaintiff's supporting affidavits do not prove that defendant National violated General Statutes 38a-816(6), as the plaintiff fails to prove that National made misrepresentations relating to the insurance coverage at issue or that National failed to take prompt action with respect to the plaintiff's claim. Since the plaintiff fails to prove that National violated38a-816(6) "with such frequency as to indicate a general business practice," the plaintiff cannot prove that National's conduct amounts to a violation of CUTPA. Accordingly, since no genuine issues of material fact exist, the plaintiff's motion for summary judgment against National is denied, and the defendants' cross-motion for summary judgment in favor of defendant National is granted.
The undisputed facts stated in the plaintiff's supporting affidavits fail to prove that defendant National violated General Statutes 38a-816(1), and (2) as the plaintiff fails to prove that National (1) misrepresented the true nature of its insurance policy; (2) made a misrepresentation for the purpose of inducing a lapse, forfeiture, exchange, conversion or surrender of the plaintiff's policy, or (3) engaged in some form of false CT Page 2071 advertising.
Since the plaintiff has failed to prove that National violated CUIPA, the plaintiff failed to prove that National engaged in some unfair business practice or violation of public policy that would amount to a violation of CUTPA. Since no genuine issues of material fact exist, the plaintiff's motion for summary judgment against National is denied, and the defendants' cross-motion for summary judgment in favor of defendant National is granted.