NATHANIEL M. CAWLEY ET AL. *v.* HOUSING AUTHORITY OF THE CITY OF NEW HAVEN

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 14—decided June 23, 1959

*Charles M. Lyman,* for the appellants (plaintiffs).

*Donald E. Cobey,* with whom was *Samuel A. Persky,* for the appellee (defendant).

SHEA, J. The plaintiffs own and occupy property at 204 Eastern Street in New Haven. The neighborhood, with the exception of one two-family residence, has consisted of single-family dwellings for more than ten years. Eastern Street runs north and south and connects the business section of East Haven with the highway known as route 80 or Foxon Road. There are no buildings for several hundred feet to the north or to the south of the plaintiffs' property. By warranty deed dated April 30, 1957, the defendant acquired title to about twenty-one acres of unimproved land on Eastern Street opposite the property owned by the plaintiffs. The defendant paid about $75,000 for the land and proposes to erect upon it a group of separate housing units under the statutes relating to moderate rental housing projects. Rev. 1958, §§ 8-69—8-81. The over-all cost of the project is expected to be about $2,000,000. The housing units will contain 154 apartments, of which 20 will have two bedrooms, to be rented for $67 monthly; 76 will have three bedrooms, to be rented for $72 monthly; and the remaining 58 will have four bedrooms, to be rented for $76 monthly. All the rentals will be lower than rentals in comparable houses in private ownership. The aggregate gross floor area of all the buildings will total 19.3 per cent of the area of the land upon which they are

to be erected. The project will include various automobile parking areas. There will be a driveway substantially semicircular in form, the northerly outlet of which will be on Eastern Street directly opposite the plaintiffs' home. Play areas will occupy between two and three acres of land. The defendant's property is just west of the municipal golf course.

Ten per cent of the rent from the project will be paid to the city of New Haven in lieu of property taxes. The project will be financed by means of loans at low rates of interest from the state of Connecticut, to be repaid from the net rent. The defendant claims that it has the right thus to borrow money for the construction of the project, because an emergency exists. Rev. 1958, § 8-69. Between the summer of 1956 and the time of the trial of this case, the city of New Haven has been able to relocate 886 families who lived in the area of the so-called Oak Street redevelopment project. Of these families, 145 were eligible for moderate rental public housing, but only 16 were moved into such housing. The acute shortage of units with three or more bedrooms prevented the relocation into moderate rental public housing of many of the families who qualified for, and would have accepted, such housing had it been available. The defendant now has pending 332 applications for moderate rental housing. Of the families who made these applications, 239 do not now live in public housing and 93 are now living in public housing under unhealthful conditions due to overcrowding. Eighty-four of the families are from the Church Street area which is being redeveloped. A substantial number of additional applications will be made by eligible families who will require moderate rental public hous-

ing when they move from the area of the Wooster Square redevelopment. The potential occupants of the proposed housing units are not restricted to persons of any one locality or of any one type of locality and will not be limited to persons whose present housing accommodations are a menace to the health, safety, morals and welfare of the residents of New Haven.

The properties of the parties to this action are all located in a residence B zone, in which is permitted the erection of multiple dwellings or two-family detached dwellings if the aggregate gross area of all floors in such a building is not greater than twice the area of the lot. New Haven Zoning Ordinance §§ 1013, 1012 (1955). The plaintiffs' property has a present value of $7200, which may be reduced somewhat when the defendant's housing units are erected, but any such reduction will not be peculiar to the plaintiffs' property. If a reduction in value should occur, similar reductions would be suffered by other property owners in the neighborhood. At the time of the trial there was in fact a presently existing emergency with respect to housing for moderate income families. The trial court concluded that any damage accruing from the erection of the housing units would not be special or peculiar to the plaintiffs and that the project would not constitute a nuisance as to them and their property. The plaintiffs seek to correct the finding, but no changes which would advantage them are warranted. The claim that the court should have considered certain statements made in a trial brief filed by the plaintiffs is without merit.

In *Benson* v. *Housing Authority*, 145 Conn. 196, 140 A.2d 320, the present plaintiffs, along with certain others, sought similar relief against the defend-

ant because of the contemplated construction of this housing development. The decision in that case is controlling here. The plaintiffs seek to distinguish it by now claiming special or peculiar and irreparable damage on the ground that the erection of the housing units will be a nuisance. In support of this position they cite *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 A. 483. That case held that one who suffers an injury special and peculiar to his property may seek injunctive relief against the use of a structure which, located in a place forbidden by law, is a nuisance. In the present case, the trial court found that any damage which the plaintiffs may suffer will not be special or peculiar to them and that the erection of the housing units will not create a nuisance as to them and their property. The court was amply justified in reaching these conclusions. It is unnecessary to consider the constitutionality of the moderate rental housing statutes, the alleged violation of the zoning ordinance, or the existence of a present emergency. *Benson* v. *Housing Authority,* supra, 204.

There is no error.

In this opinion the other judges concurred.