ROBERT J. SCOVILLE ET AL. *v.* ANTON RONALTER ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, JS.

Argued November 4—decided December 10, 1971

*Marc A. Wallman,* with whom, on the brief, was *John A. Oliva,* for the appellants-appellees (defendants Marwood Apartments, Inc., and Carabetta Enterprises, Inc.).

*Thaddeus Maliszewski,* for the appellees-appellants (named plaintiff et al.).

COTTER, J. The plaintiffs, Robert J. and Bobbie B. Scoville, Arthur F. and Rosalie R. Jacobs, Walter and Eleanor K. Nightingale and Ernest and Virginia Bielert, resident taxpayers of the city of Bristol, owners of premises abutting the property which is the subject of the present litigation, brought this cause of action together with other plaintiffs, who are not parties to this appeal. This suit was brought against Anton Ronalter, building inspector and zoning enforcement officer of the city of Bristol, D & D Builders, Inc., Marwood Apartments, Inc., and Carabetta Enterprises, Inc. The trial court found in favor of the defendants Ronalter and D & D Builders, Inc., and the plaintiffs have not pursued their cross appeal as to those defendants.

Marwood Apartments, Inc., one of the defendants, acquired by deed in February, 1970, certain land located on the westerly side of Hiltbrand Road in the city of Bristol. On April 4, 1960, an application for a change of zone of that property from B residence to business was heard by the Bristol zoning authority. The plaintiffs alleged in their complaint that they, as owners of homes abutting the property described, signed a petition which "had been circu-

larized by the applicant" for the change of zone among the residents of the area to influence the residents to approve the application "for a change of zone to business on the representation that a shopping center would be constructed." The plaintiffs further alleged that seven building permits, which "were never signed as required by law or were never legally issued in accordance with applicable law" were applied for on December 18, 1968, by the defendant D & D Builders, Inc., to build wood and brick apartment buildings on the subject land and that, thereafter, on March 26, 1970, the defendant Carabetta Enterprises, Inc., sought to apply for a renewal of the permits to build apartments on the land "but said purported renewals were never signed as required by law or were never legally issued in accordance with applicable law." It was not until about April 1, 1970, that a foundation was partially poured for the first building.

It was the claim of the plaintiffs, and alleged, that the building permits and renewals were invalid; that the construction of the apartments is "in breach of the original representations made in 1960 as to the use of the land for a shopping center" and that such apartment construction "will substantially reduce the market value of the plaintiffs' properties . . . and will cause irreparable damage to the plaintiffs, and constitute a nuisance." The plaintiffs claimed they have no adequate remedy at law and they sought, inter alia, an injunction enjoining and restraining the defendant corporations from doing any and all acts in the construction of apartments on the property in question, an order declaring the building permits and renewals invalid and money damages.

The trial court refused to grant an injunction but concluded that the plaintiffs in this appeal, the

Scovilles, the Jacobses, the Nightingales and the Bielerts, were entitled to money damages in the amount of $2000 each because their properties "suffered damage that was special and peculiar to them because their properties, in addition to a temporary diminution value suffered by other properties in the general neighborhood, would because abutting on the site be subject to the sight, noise and disturbance of construction."

The defendants Marwood Apartments, Inc., and Carabetta Enterprises, Inc., hereinafter called the defendants, appealed to this court from the judgment of the trial court and the plaintiffs Scoville, Jacobs and Nightingale, took a cross appeal from the judgment rendered by the Court of Common Pleas.

The trial court was warranted in finding the following facts which are pertinent to a disposition of this appeal: In February, 1960, the defendant D & D Builders, Inc., applied to the zoning commission of the city of Bristol requesting that the zoning of the subject property be changed from B residence zone to B business zone. The zoning commission changed one-third of the land to B business zone and made no change in zone as to the remaining two-thirds of the land described in the application. The zoning regulations of the city of Bristol did not permit apartment buildings in a B residence zone. As a result of the action of the zoning commission in 1960 the northerly one-third of the subject property was placed in the B business zone and the southerly two-thirds remained in the B residence zone. On receiving the minutes of the zoning commission meeting in 1960, the city engineer amended the official zoning map to reflect the action of the zoning commission. The zoning map from 1960 to the day of the trial depicted the northerly one-third of the subject prop-

erty in a B business zone and the southerly two-thirds in a B residence zone. There was conflicting testimony and evidence offered at the trial relative to the zoning of the area in question. The defendants claim that the minutes of the meeting of the zoning commission in 1960 reflect that a change of zone was approved from B residence to B business, reserving two-thirds of the subject premises for parking, and that a copy of the decision of the zoning commission was attached to the official map. The credibility of the evidence, however, was for the trial court. The defendant D & D Builders, Inc., in December, 1968, obtained from the defendant Ronalter, the building inspector and zoning enforcement officer of the city of Bristol, seven building permits for the construction of garden-type apartments on the subject property and at that time the defendant D & D Builders, Inc., entered into a sale of the property to the defendant Carabetta Enterprises, Inc., conditioned on securing building permits for the construction of garden-type apartments, the erection of which was not permitted in a B residence zone but was allowed in a B business zone.

When the defendant Ronalter issued the building permits in December, 1968, he believed that the official zoning map was in error and that the zoning commission intended to grant the 1960 change from B residence zone to B business zone of all the land described in the application and merely delineated the area on which buildings might be constructed and parking maintained. On March 26, 1970, the defendants Carabetta Enterprises, Inc., and Marwood Apartments, Inc., renewed the original building permits which had expired because actual construction had not begun under them within six months of issuance as required by the building code and at that

time the defendants, Carabetta Enterprises, Inc., and Marwood Apartments, Inc., began the construction of garden-type apartments on the property. Between December, 1968, and April 10, 1970, the day the order to show cause was served on all defendants, the defendants Carabetta Enterprises, Inc., and Marwood Apartments, Inc., incurred obligations in excess of $600,000 for land acquisition, site work, advance material, legal fees and architectural costs plus a construction mortgage commitment for an F.H.A. insured mortgage of $1,992,000. The defendant Carabetta Enterprises, Inc., the general contractor, had let contracts to subcontractors in the amount of $532,594 at the time of the commencement of this action. The city of Bristol adopted the state building code in December, 1960, effective January 3, 1961, which has been in effect since that time. Section 128.1 of the city building code (the equivalent to § 19-402 of the General Statutes, the State Building Code) provided for the appointment of a board of appeals to review on appropriate appeal the actions of the building inspector. Such a board was never appointed by the city. The plaintiffs commenced legal action against all the defendants after the publication of an article in the Hartford Courant on April 1, 1970, which stated that the apartments to be constructed on the property would be occupied by families of low rather than moderate incomes.

The trial court concluded that the building inspector could not modify the official zoning map by the issuance of building permits for a type of structure that was not permitted in a zone designation shown on the map; that the permits were invalidly issued under a mistake of facts by the building inspector; and that the failure of the city of Bristol to appoint a board of appeals under the building code deprived

the plaintiffs of any administrative remedy from erroneous decisions of the building inspector.

It is one of the claims of the defendants that the plaintiffs are not entitled to judgment because they failed to pursue statutory rights of appeal to the Bristol zoning board of appeals, citing §§ 8-7, 8-8 and 8-9 of the General Statutes. We cannot say that under the peculiar and unusual circumstances of this case that the plaintiffs as a matter of law are precluded from taking the action they did. See *Kiska* v. *Skrensky,* 145 Conn. 28, 34, 138 A.2d 523; *Corsino* v. *Grover,* 148 Conn. 299, 308, 170 A.2d 267.

The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury. *Bendell* v. *Johnson,* 153 Conn. 48, 51, 212 A.2d 199; 42 Am. Jur. 2d, Injunctions, §§ 48, 49; see *Herbert* v. *Smyth,* 155 Conn. 78, 85, 230 A.2d 235; *Brainard* v. *West Hartford,* 140 Conn. 631, 634, 103 A.2d 135. The plaintiffs must allege facts which, if proven, would establish irreparable injury and assume the burden of proving facts which will establish substantial and irreparable damage if they are to prevail in their request for injunctive relief. *Crouchley* v. *Pambianchi,* 152 Conn. 224, 226, 205 A.2d 492. The trial court found that the completed apartments and their occupancy would not constitute a nuisance; that there would be no permanent depreciation to the plaintiffs' properties; and it also concluded that diminution in value of the properties would terminate on the completion of construction, at which time the apartment buildings would not constitute a nuisance; and that the damages sustained by the plaintiffs are

not irreparable and can be assuaged by money. The court was justified in making these findings and reaching these conclusions as to injunctive relief. See *Cawley* v. *Housing Authority,* 146 Conn. 543, 547, 152 A.2d 923. It is significant that the plaintiffs alleged in their complaint that they signed the 1960 "petition in favor of the zone change to business for a shopping center." This in itself would indicate that money damages would suffice to reimburse them; the plaintiffs have stated twice in their complaint that they had agreed to the construction of a shopping center on the premises in question, a type of development which would also have affected the value of their properties, and that they are ostensibly concerned with a measurement of damages which is one of monetary degree, viz., loss in value due to construction of apartments vis-a-vis the development of a shopping center to which they had agreed in 1960, so that the allegations of special, irreparable injury and specifications of fact to support it fall short of the legal standard or test which would require the trial court to issue an injunction. *Benson* v. *Housing Authority,* 145 Conn. 196, 203, 140 A.2d 320; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 480, 138 A. 483; 42 Am. Jur. 2d, Injunctions, § 40. The trial court was not in error in refusing to grant injunctive relief.

The plaintiffs alleged that the construction of the apartments "will substantially reduce the market value of the plaintiffs' properties." In support of this allegation the plaintiffs offered, as a witness, James C. Oles, a real estate broker and appraiser, who testified that he established a differential value for the plaintiffs' properties before and after construction of the apartments; that he valued the Jacobs property and the Scoville property at $20,000

each before the construction of the apartments and $18,000 each after the construction; and that he valued the Nightingale property at $21,000 before construction and $19,000 after construction and the Bielert property at $19,000 before construction and $17,000 after construction. He testified that the apartments would have an adverse effect on the value of the plaintiffs' properties because of the increased density in population and that with increased density there was a relationship to the number of people and traffic; and that the amount of increased traffic would have an effect on the area. The trial court awarded $2000 per parcel to the plaintiffs Jacobs, Scoville, Nightingale and Bielert. The court found that those plaintiffs "suffered damage that was special and peculiar to them because their properties, in addition to a temporary diminution value suffered by other properties in the general neighborhood, would because abutting on the site be subject to the sight, noise and disturbance of construction" and that once construction was over, the diminution in value would terminate. The evidence before the trier was insufficient to measure and support with reasonable certainty a finding of the existence of those elements of damages which the court enumerated and found to have been sustained by the plaintiffs. The measure of recovery in damages for permanent injury to realty is diminution in its value which can be determined by many factors, an example of which was the opinion expressed by the plaintiffs' appraiser. *Taylor* v. *Conti,* 149 Conn. 174, 180, 177 A.2d 670; 22 Am. Jur. 2d, Damages, §§ 132–35. There is a difference in the standards and elements to be applied to a recovery for damages for injury to real estate where the injury is temporary as opposed to permanent injury. *Stratford*

*Theater, Inc.* v. *Stratford,* 140 Conn. 422, 424, 425, 101 A.2d 279, and note, 41 A.L.R.2d 1064; 22 Am. Jur. 2d, Damages, § 135.

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion the other judges concurred.