[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this matter are Barbara J. Hampton, her husband, Howard F. Fielding and her father, Robert R. Hampton. The defendant is James T. Morrissey. An original defendant, the Woodbury Telephone Company and the plaintiffs resolved their matter in a Stipulated Judgment on May 7, 1993. The plaintiffs filed a seven count complaint of which the first three counts pertain to the defendant James T. Morrissey and counts four through seven to an original defendant, the Woodbury Telephone Company. The complaint alleges a history of harrassing telephone calls by the defendant James T. Morrissey to the plaintiff, CT Page 7980 Barbara J. Hampton.
This matter was commenced by a seven count complaint dated September 25, 1990 with a return date of November 20, 1990. Thereafter the defendant, Woodbury Telephone Company, filed an answer and two special defenses dated April 16, 1991. Subsequent to that date, the plaintiffs filed a Reply to said Special Defenses dated May 15, 1992. On May 19, 1992 the plaintiffs claimed this matter for the trial list. The defendant Woodbury Telephone Company filed a Motion for Summary Judgment dated August 12, 1992. One of the plaintiffs, Barbara J. Hampton, filed an Affidavit in Opposition to the aforesaid Motion for Summary Judgment dated September 24, 1992. No hearing was ever held on said Motion for Summary Judgment. Then a Stipulation for Judgment dated October 14, 1992 was filed with the court. This Stipulation for Judgment was between the plaintiffs and the defendant, Woodbury Telephone Company. On January 26, 1993, the defendant, James T. Morrissey filed a Motion to Reopen said Stipulated Judgment. On May 7, 1993 the court granted Mr. Morrissey's motion and reopened the aforesaid Stipulated Judgment. Mr. Morrissey appeared pro se at that hearing. After granting said motion to reopen, the court then heard all of the parties on whether to accept the aforesaid stipulated judgment. After that hearing the court accepted and approved over the objection of the defendant, James T. Morrissey, the Stipulated judgment entered into by the plaintiffs and the defendant Woodbury Telephone Company. Previous to that date the court had entered a default against the defendant, James T. Morrissey, on May 29, 1992. On November 1992 the defendant James T. Morrisey filed a pro se appearance. On December 3, 1992 the court held a hearing in damages and substantial damages were awarded to the plaintiffs, to be paid by the defendant James T. Morrissey. On December 15, 1992 the defendant Morrissey filed a Motion to Reopen the judgment entered against him. This motion was granted on January 7, 1993. (See Memorandum of Decision, Blue, J.) The plaintiffs filed a Motion for Default for Failure to Plead dated January 29, 1993. This motion was denied with a notation in the file that the defendant Morrissey filed an answer on December 15, 1992. The undersigned reviewed the file and could find no such answer. Then another Motion for Default for Failure to Plead dated February 25, 1993 was filed by the plaintiffs against the defendant Morrissey. On March 1, 1993 this motion was granted. Then on May 7, 1993 the Morrissey, filed a Motion for a Jury Trial. The undersigned denied this motion as it was not filed within thirty days after the return date or within ten days after the CT Page 7981 issues of fact were Joined (Connecticut General Statute 52-215). After this denial the defendant Morrissey, on numerous occasions, orally made the motion for a Jury trial during the trial (hearing in damages) of this matter. Then on June 17, 1993 the defendant Morrissey made a "Motion to Request a Guardian Ad-litem" be appointed for him which the court denied. He requested the appointment of a guardian for the purpose of assisting him in obtaining legal counsel for this matter. The court would state here that it is satisfied that the defendant, James T. Morrissey is and was a competent person during these proceedings. In the court's opinion he fully understood what these proceedings were about notwithstanding Exhibits 1, 2 and 3.
On October 14, 1992 the plaintiffs entered into a stipulated judgment with the defendant, Woodbury Telephone Company which judgment was ultimately accepted and approved by the court as stated herebefore. That judgment reads as follows:
STIPULATION FOR JUDGMENT
It is agreed by and between the plaintiffs and the defendant, Woodbury Telephone Company, that the Woodbury Telephone Company is enjoined from:
(a) restoring full local telephone service to the defendant, James T. Morrissey, other than service limited to access to so-called "911" emergency response at any time prior to January 1, 2003.
(b) upon receipt of complaints from one or more of the plaintiffs of the receipt of harassing telephone calls, and upon the request of one or more of the plaintiffs, failing to place a "call trace" upon the plaintiff's telephone or to cooperate with law enforcement officials.
It is further agreed that the Woodbury Telephone Company will pay to the plaintiffs an amount equal to the filing fees and sheriff's fee for service of the complaint, in this action ($170.42).
On June 17, 1993 the court heard the remaining issues which were set forth in Counts One, Two and Three of the Complaint. Count One alleged harassment, Count Two alleged Intentional Infliction of Emotional Distress and Count Three alleged invasion of privacy. The plaintiffs seek the following from the CT Page 7982 defendant James T. Morrissey:
1. Damages.
2. Punitive damages.
3. Attorney's fees and court costs.
4. A permanent injunction against Defendant James T. Morrissey, prohibiting and restraining him from:
 (a) Telephoning Plaintiffs, Plaintiffs' family, or Plaintiffs' parents, either at home or at work;
 (b) Ordering any merchandise or services in the name of Plaintiffs, Plaintiffs' family, or Plaintiffs' parents.
 (c) Arranging for the delivery (either by mail or otherwise) of any letter, greeting card, postal card, parcel, merchandise, service, or gift to Plaintiffs, Plaintiffs' family, or Plaintiffs' parents.
 (d) Entering the buildings or appurtenant parking areas at any business location occupied by Plaintiffs, Plaintiffs' family, or Plaintiffs' parents (except for legitimate business or personal reasons and upon express invitation of another owner or occupier of such premises), including (i) Pomperaug Office Park, Main Street South, Southbury, CT; (ii) 220 Main St. South, Southbury, CT; and (iii) 389 Meadow St., Waterbury, CT.
 (e) Entering the buildings or appurtenant parking areas at any residential property occupied by Plaintiffs, Plaintiffs' family, or Plaintiffs' parents; including (i) 74 Main St. North, Woodbury, CT; and (ii) 643 Bucks Hill Rd., Southbury, CT.
 (f) Entering the property, buildings, or appurtenent parking areas of any public or private school, house of religious worship, or community association except where he is enrolled or a member.
The plaintiff Barbara J. Hampton is a practicing attorney in Southbury, Connecticut. She maintains her office separate from her home. She is married to the plaintiff Howard F. Fielding and CT Page 7983 they have two young children. The plaintiff, Robert R. Hampton is the father of the plaintiff Barbara J. Hampton and he also worked for her as a legal assistant. Attorney Hampton testified that she has been receiving harassing telephone calls from the defendant Morrissey since 1981 both on her home and business phones. She testified that she complained to the Woodbury Telephone Company and she was instructed to ignore the calls, not encourage the caller, and to just hang up. When this method did not work, she notified the Connecticut State Police. She was instructed to keep a log of these harassing calls. She did keep such a log for weeks. A trap was placed on her phone and it revealed the calls were coming from telephone number 263-3195. In 1982 Attorney Hampton moved her office out of her house and the calls continued. At this time Attorney Hampton had a "call forwarding" device on her phone. This allowed calls that came into her office to be forwarded to her at another location. She stated when these harassing calls came in half of the time the person making the call would hang up when she or someone else answered the phone. The rest of the time a radio or television would be played into the phone and when she asked who it was, there would be no response. Calls would come in at all hours. There was testimony about calls coming in at 2:00 a.m. midnight on Christmas Eve and various other hours of the day and night. Attorney Hampton testified on one occasion after the phone rang for twenty minutes she picked up and the caller hung up. On another occasion she received approximately three dozen calls in rapid succession. One time she testified she had just gotten in the house after returning from vacation and she got one of these calls. She said made her wonder if the defendant Morrissey was keeping watch on her. She stated the maximum number of calls she received in a day was approximately fifty. She stated she got an answering machine after the problem became long term. She used the answering machine during business days and overnight. The tapes for this answering machine were thirty minutes in duration and many times when she played back these tapes it was thirty minutes of these harassing calls. Sometimes there would be a legitimate call mixed in with these harassing calls and sometimes the tapes were just all harassing calls. Of course Attorney Hampton or her employees had to listen to the whole tape to see if there were any legitimate calls on it. Then when the plaintiff got two telephone lines into her office these harassing calls would fill up both lines on the answering machine. Attorney Hampton said the harassing calls stopped when the "trap" was placed on her phone. In 1990 two or three weeks after the "trap" was removed from her phone Attorney Hampton again started getting harassing calls. CT Page 7984 Attorney Hampton testified she received calls every year since 1981 and that the calls that came in in 1987, 1988, 1989 and 1990 were all of the same kind. For obvious reasons Attorney Hampton did not wish to have an unlisted telephone number at her home but she testified that when she received calls just before the birth of her second child she realized she had no choice but to get an unlisted number which she had installed the next day.
Attorney Hampton testified that on occasion between 1987 and 1990 the defendant Morrissey would speak to her on these calls, and sometimes he would speak not using his normal voice. At other times when she would pick up a ringing phone Beatles music or the theme song from the movie "Town Without Pity" would be playing. At times Attorney Hampton would answer the phone and a voice would say "I love you". She would hang up and immediately the phone would ring and she'd pick up and a voice would say "I hate you". Attorney Hampton said on two occasions when she left her office the defendant Morrissey came in looking for her and on one of these occasions she feels that Mr. Morrissey went through the papers on her desk because when she returned, the papers had been moved. However, no one saw the defendant go through these papers. Attorney Hampton testified the latest answering machine she has disconnects calls like the defendant Morrissey's and thus the answering tape does not become filled up with such calls.
The plaintiff Robert R. Hampton testified that the harassing phone calls started coming into his home in 1981. He was a legal assistant to Attorney Barbara J. Hampton during much of this period since 1981 and specifically during the years 1987 to 1990. Part of his responsibilities in this position was to answer the phone for Attorney Hampton. He said when he received these harassing calls he would usually answer the phone "Good Morning, Attorney Hampton's office", there would be an immediately click when he said this and the caller would hang up. He stated part of his responsibilities were to listen to the calls that came in on the answering machine. At times the answering machine contained in excess of one hundred (100) calls on one recording period where the caller would just call and hang up continuously. These calls greatly upset Mr. Hampton. In June 1991 he had heart problems which were not helped by these calls. However, there was no evidence to causally connect Mr. Hampton's heart problems to these harassing telephone calls. He stated he could not get an unlisted home phone number because he is very active in the Boy Scouts and there are times when persons must call him relative to scouting activities. He testified his wife is sick and if he is CT Page 7985 not home and she receives these calls, she gets very upset. This concerns him greatly. Mr. Hampton testified he has suffered no monetary loss as a result of these harassing calls. He seeks a permanent injunction against the defendant James T. Morrissey to prohibit him from making any harassing phone calls or having any contact with him whatsoever. He also seeks money damages for his emotional distress caused by these harassing phone calls.
The plaintiff Howard F. Fielding also testified. He stated he first learned of these harassing phone calls in 1981 when he became engaged to Barbara J. Hampton. At that time his wife told him about these calls but she did not know who was responsible for them. He testified that in late 1987 calls would come into his home and when he picked up the phone to see who was calling, there would be an immediate disconnect click. One night there were over one hundred such calls between 8:00 p.m. and 2:00 a.m. at which time the plaintiff disconnected the phone. Mr. Fielding testified that on numerous occasions he received 20 to 80 such calls in a twenty-four hour period. In the last quarter of 1987 there were calls like that received on approximately twenty-five occasions. During the first three quarters of 1988 he received such calls on fifty or sixty occasions at his home. Mr. Fielding testified in the last quarter of 1988 he got an unlisted telephone number and the calls stopped. Mr. Fielding stated these calls caused him anger, frustration and distress. He is a newspaper editor and a free lance writer and as such he needs to have a public telephone number where he can be reached. He stated that after he had an unpublished telephone number installed in his home, he earned no further income as a free lance writer. Prior to having an unlisted phone installed in his home, he earned $1,750.00 from his free lance writings, a business he started in 1988. Since he installed said unlisted phone number, he has earned no income as a free lance writer. He attributes this loss of income to having an unlisted phone number. He and his family are afraid to give out their unpublished number because they are afraid that if they do that, the defendant James T. Morrissey will somehow obtain their unlisted number. Mr. Fielding testified he has expended over $300.00 for answering machines since these calls started. He also paid $50.00 to obtain an unlisted number in 1988 and $10.00 each month thereafter to retain said number. Mr. Fielding testified he wants a permanent injunction prohibiting the defendant James T. Morrissey from making harassing telephone calls to him or his family and prohibiting Mr. Morrissey from any contact whatsoever with him and his family. CT Page 7986
The plaintiffs Barbara J. Hampton and Robert R. Hampton both testified that they kept a log during part of the period when they were receiving said telephone calls (See Exhibits A and B). The plaintiff Barbara J. Hampton is seeking money damages for physical and emotional distress. She stated her income increased by $20,000.00 in 1992 when there were much fewer harassing calls made to her. She is also seeking a permanent injunction prohibiting the defendant James T. Morrissey from having any contact with her or any members of her family. She testified that she receives cards at various time from a person she believes is the defendant and that he orders products from firms in her name. She is seeking an injunction prohibiting those activities of the defendant.
Betty Little the Clerk of the Court for Geographical Area #4 testified that on June 19, 1991 the defendant James T. Morrissey plead guilty in that court to twenty-seven (27) counts of harassment in the Second Degree in violation of Connecticut General Statutes 531-183 (Exhibit D). He was given an unconditional discharge on each of these counts. Mrs. Little testified that on June 19, 1991 Mr. Morrissey was found guilty of one hundred and sixty-two (162) counts of Harassment in the Second Degree in violation of Connecticut General Statutes 53a-183
(Exhibit E). He was given consecutive sentences of three months suspended one year probation on each of said one hundred and sixty-two (162) counts. In addition, the court ordered the defendant to have no contact with the plaintiff Barbara J. Hampton or her family, restricted phone use by the defendant and he was ordered to undergo medical and psychological evaluation and/or treatment. In addition, Mr. Morrissey was ordered to cooperate with a treatment program at a local hospital. All of the aforementioned criminal convictions related to harassing phone calls made by the defendant to the plaintiffs.
The defendant James T. Morrissey testified that his telephone number was 263-3195. He stated he called the plaintiff Barbara J. Hampton only when he wanted to talk to her because he liked to hear her voice. He said she would not talk to him. He testified he only called Attorney Hampton to communicate with her. He stated he probably made the telephone calls to her in 1989 and possibly 1988. He testified he sometimes ordered magazine subscriptions in Attorney Hampton's name but he never paid for them. During the testimony of Attorney Hampton she said she received a card which was entered as Exhibit C. Mr. Morrissey testified he could have sent said card. CT Page 7987
Mr. Morrissey stated he is fifty-one (51) years of age who lives on a Social Security pension in a home he inherited from his parents. He stated he has no close relatives. He is an outpatient at Waterbury Hospital in a mental health group. He introduced Exhibits 1, 2 and 3 which relate to his psychological background going back to 1955. He stated he only went to the fifth grade when he was in school. The undersigned observed the defendant during this trial and during a hearing on this matter on May 7, 1993. In the opinion of the undersigned, the defendant understands the nature of these Proceedings, what they are about and why and what could result to him if the plaintiffs prevail on their claims.
Attorney Hampton has testified that the harassing telephone calls are less in number now that the Woodbury Telephone Company has put restrictions on the defendant's use of his phone as previously set forth herein.
Count one of the complaint alleges that the defendant harassed the Plaintiffs by his actions. The evidence is overwhelming that the defendant annoyed and harassed each of the Plaintiffs by his numerous telephone calls as set forth hereinbefore. His mailings of cards and other items to the Plaintiff Attorney Barbara J. Hampton were also a cause of annoyance and harassment to her.
Count two of the complaint alleges the defendant intentionally inflicted emotional distress on the plaintiffs. A defendant is not liable for emotional distress unless the defendant. . . . should have realized that his conduct involved an unreasonable risk of causing the distress and from the facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm. Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 341.
Here the plaintiffs suffered no bodily harm which was proven. However, each was caused distress by the defendant's telephone calls and each suffered as a result thereof. The defendant should have realized that this suffering would be a result of his actions. In this matter there was no testimony relative to medical bills or medical treatment rendered to either the plaintiffs Barbara J. Hampton or Howard F. Fielding. An award of damages for emotional distress may be valid even though it is not substantially based on incurred medical expenses. Berry v. CT Page 7988 Loiseau et al, 223 Conn. 786, 811. The test is whether the amount awarded, aside from medical expenses, falls within the necessarily uncertain limits of just damages. IBID.
As to Count Three of the complaint, there are four categories of invasion of privacy. . . . as set forth in The 3 Restatement (Second) of Torts #652A as follows: #652B — unreasonable intrusion upon the seclusion of another; Venturi v. Savitt, Inc., 191 Conn. 588,591. Based on the evidence elicited at trial, all of the plaintiffs proved by a fair preponderance of the evidence that the defendant James T. Morrissey unreasonably intruded on their privacy.
The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the Justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury. The plaintiffs must allege facts which, if proven, would establish irreparable injury and assume the burden of proving facts which will establish substantial and irreparable damage if they are to prevail in their request for injunctive relief. Scoville v. Ronalter, 162 Conn. 67, 74. The plaintiffs in this matter have sustained their burden of proof required for a permanent injunction.
A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. Hart, Nininger Campbell Associates, Inc. v. Rogers,16 Conn. App. 619, 632. A court may award both injunctive relief and money damages. Ibid.
After hearing the evidence, the court finds the issues for the plaintiffs Barbara J. Hampton, Robert R. Hampton and Howard F. Fielding on counts one, two and three of the plaintiffs' complaint.
The court issues a permanent injunction against the defendant James T. Morrissey prohibiting and restraining him from:
(a) Telephoning any of the plaintiffs, or their families either at home or at work or at any other location;
(b) Ordering any merchandise or services in the name of any of the plaintiffs or their families. CT Page 7989
(c) Arranging for the delivery (either by mail or otherwise) of any letter, greeting card, postal card, parcel, merchandise, service, or gift to any plaintiff in this matter or any member of their families.
(d) Entering the buildings or appurtenant parking areas at any business location occupied by any of the plaintiffs, or their families (except for legitimate business or personal reasons and upon express invitation of another owner or occupier of such premises), including but not limited to (i) Pomperaug Office Park, Main Street South, Southbury, CT; (ii) 220 Main St. South, Southbury, CT; and (iii) 389 Meadow St., Waterbury, CT.
(e) Entering the buildings or appurtenant parking areas any residential property occupied by any of the plaintiffs, or their families including but not limited to (i) 74 Main St. North, Woodbury, CT; and (ii) 643 Bucks Hill Rd., Southbury, CT.
(f) Entering the property, buildings, or appurtenant parking areas of any public or private school, house of religious worship, or community association where the plaintiffs or any members of their family are then located with the intent to have contact with said plaintiffs or members of their families.
(5) Having any contact with the plaintiffs or any members of their families for any reason whatsoever or at any location whatsoever or in any manner whatsoever including but not limited to telephonic, personal computer or mail contact.
(6) As used in this memorandum order the term family shall include spouse, children, parents, uncles, aunts, nieces, nephews and employees of the plaintiffs and their families.
The court would further order that if the defendant James T. Morrissey violates any of the provisions of the permanent injunction set forth herein, he shall be assessed a fine of One Thousand ($1,000.00) Dollars for each of said violations.
The court further awards damages of Twenty-Five Thousand ($25,000.00) Dollars to the plaintiff Barbara Hampton to be paid by the defendant James T. Morrissey. The court awards Howard F. Fielding damages of Five Thousand ($5,000.00) Dollars which includes the expense of purchasing answer machines and having an unlisted telephone number at his residence and the costs relative CT Page 7990 thereto.
The court further orders that the money damages awarded herein to the plaintiffs shall be secured by judgment lien being filed against any real estate owned by the defendant.
The court further orders that a copy of this memorandum be sent to the police department responsible for protecting the peace in Southbury, Connecticut where the plaintiffs and the defendant reside. That Police Department should take notice of the terms of the permanent injunction set forth herein. Should the plaintiff(s) move their business offices or residences to another town or city, then the Police Department(s) in that town(s) or city(ies) should also be made aware of the terms of this judgment if the plaintiff(s) so desire. The plaintiff(s) shall be responsible for such notification as the court has no way of knowing if the plaintiff(s) have moved their business office(s) or residence(s).
In considering damages, the court only considered the calls received in the three year period prior to the commencement of this action.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, J.