[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
There came before the court two actions brought by the plaintiff against the defendants. The first to be filed, Docket Number CV95 0144760 S was filed on April 5, 1995, the second, bearing Docket Number CV95 0144756 S, was filed April 6, 1995. Upon motion of the defendants this court dismissed the second case based upon the doctrine of prior pending action.
The matter to be decided by the court, then, in TricoastalLanthanides, Inc. v. Betty Chang, et al, D.N. CV95 0144760 S,[1] is an application for a temporary injunction, in which the defendant Chang is alleged to have utilized confidential information, proprietary information or trade secrets, misappropriated from the plaintiff, in competition and interference with the business of the plaintiff. After full hearing, the court finds the following facts. The plaintiff entered into the business of dealing in lanthanides in approximately 1991. Lanthanides means rare earths, CT Page 10769 of which there are seventeen. They are used worldwide, for polishing glass, catalytic converters and other metallurgic applications of a technical nature. The defendant, Betty Chang, was hired in 1990 to develop the rare earths business. She had previously worked for six years for Metallurgic Imports/Export Corp., Inner Mongolia Branch, a company involved in exporting rare earths. Through her work she had access to directories of people who buy and sell rare earths, and was a great benefit to the plaintiff whose business was to act as an intermediary between the sellers (importers) and buyers of such materials. Her fluency in Chinese was apparently also crucial.
Mr. Williams and Mr. Young (the owners of the plaintiff company) had little or no prior experience dealing in lanthanides, so that the defendant Chang dealt with suppliers and customers, virtually running the business from 1991 to 1995. Williams and Young acted in a supervisory capacity and Young participated in visits to the customers with Chang.
In 1991, the plaintiff obtained three customers on a trial basis. In 1991 or 1992 the plaintiff hired one Ray Rumore who was experienced in rare earths. Rumore and Chang developed the customers, and by 1993 the company had eight active customers. In 1995, there were five active and several prospective customers.
On January 26, 1995, the plaintiff moved the location of the business from Connecticut to New York City. On February 6, 1995 the defendant Betty Chang resigned her position with the plaintiff and on February 7, 1995 formed Numinco U.S. Corp. for the purpose of dealing in lanthanides, in competition with the plaintiff. In pursuit of this effort, the defendant attempted by letter dated February 13, 1995 addressed to a customer of the plaintiff, Rhone Poulenc, to divert an existing purchase order or orders from the plaintiff to her own new company. Four days later she retracted the letter. She also attempted to interfere with existing purchase orders which the plaintiff had with the company known as Bjolvefobben, but shortly discontinued these efforts. There is some evidence that she placed orders for rare earth with Plant 202 in China, which was supplying cerium to a customer of the plaintiff, Johnson Matthey.
After the move to New York City by the plaintiff, it was discovered that hard files and information stored on computers were lost. One Edward Ashworth had been hired to disassemble the computers for the purpose of accomplishing the move and he deleted CT Page 10770 some materials. The defendant had placed labels on the filing cabinets for the movers.
The plaintiff's request an order of this court which generally would enjoin the defendant from using any confidential or proprietary information or trade secrets of the plaintiff; and further would order defendant to instruct plaintiff's suppliers to reinstate supply agreements with the plaintiffs; to return any and all confidential and proprietary files and other documents and data regarding customers, suppliers or business contacts of the plaintiffs.
The purpose of a temporary injunction is to preserve the status quo until a final determination of the parties' rights after a hearing on the merits. Olcott v. Pendleton, 128 Conn. 292, 295,22 A.2d 633 (1941). To obtain a temporary injunction, a plaintiff must demonstrate clearly that he will likely prevail on the merits of his claim after a full hearing on the permanent injunction, that in the absence of a temporary injunction the plaintiff would suffer irreparable harm, and that the plaintiff has no adequate remedy at law. Covenant Radio Corp. v. 1080 Corp., 35 Conn. Sup. 1, 3
(1977).
 "The issuance of a an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable harm." Scoville v. Ronalter, 162 Conn. 67, 74, 291 A.2d 222 (1971).
When an agent leaves the employ of her principal, she has a right to compete with her former employer in matters for which she had been employed, in the absence of a restrictive covenant to the contrary; but she cannot solicit customers for her own account before the end of her employment in direct competition with the employer's business. Town Country Homes Service Inc. v. Evans,~150 Conn. 314, 317, 189 A.2d 390 (1963); see Restatement, (Second) of Agency § 393, cmt. e (1958). The employee, however, is not entitled to use confidential information or trade secrets in competition with her principal. She may use general information concerning the method of business of the principal and the names of customers retained in her memory. Restatement, (Second) of Agency § 396 (1958). CT Page 10771
A list of customers may be a trade secret, but matters of general knowledge in an industry cannot be appropriated by one as his secret. If a list of customers could have been obtained by other means, the fact that the employer keeps such a list, does not make it a trade secret. See Holiday Food Co., v. Munroe, 37 Conn. Sup. 546
(1981). However, a former employee may not use confidential matters given to her only for the principal's use in unfair competition against him. Restatement, (Second) of Agency § 396 (1958).
When the defendant Chang left the employ of the plaintiff in February 1995, she immediately went into competition with her employer, and was aware of the plaintiff's customers and suppliers. She had for several years prior to her association with the plaintiff worked for a company in China dealing lanthanides. She knew the business, the entities involved in the industry, and she spoke chinese. The names of sellers and buyers of rare earths were readily available to her from sources other than the plaintiff. The plaintiff's customers numbered a handful, most of which the defendant had a hand in obtaining, and were readily retained in her memory. There is insufficient evidence that she contacted customers prior to her departure from the plaintiff's employ, and there was no restrictive covenant limiting her conduct after the severance. The defendant did attempt to solicit business from at least two customers of the plaintiff with whom the plaintiff had existing supply contracts, known to the defendant, at the time of her ending the employment. These contracts were confidential matters which the defendant attempted to use in competition with the plaintiff and her conduct in this regard was improper. Restatement, (Second) of Agency § 396(b) (1958). Within days of her written attempts to solicit these customers, she repudiated her actions, discontinued her effort to divert these contracts, and as far as the evidence shows, made no further attempts in this regard. She testified that she is not now interfering with the supply contracts of the plaintiff. There is also some evidence that the defendant was, or was attempting, to purchase cerium from Plant 202 while the plaintiff had a contract to buy for a customer all the output of cerium Plant 202 could provide for some time. It is not clear whether the defendant continues to make these purchases, but in any event, there is no evidence that her attempts to order materials from Plant 202 was for the purpose of interfering with the plaintiff's supply contract. The defendant has a right to purchase materials from any supplier on the open market to fulfill her own contracts, and of course the supplier has a right to sell to whomever it chooses. CT Page 10772
The court concludes that the defendants entering into competition with her former employer was not illegal. She was aware, without reference to any written lists, of the plaintiff's customers and was entitled to solicit them. Her contact of customers for the purpose of solicitation did not begin prior to her leaving the employ of the plaintiff. The defendant did improperly try to interfere with the plaintiff's supply contracts, but almost immediately retreated from those activities. There was no other confidential information or trade secrets of the plaintiff confiscated by the defendant. The court finds further that the defendants have not retained any confidential or proprietary files or other documents or data regarding customers, suppliers or business contacts of the plaintiff. There is no evidence that Chang's dealings with Plant 202 were for any purpose other than to obtain rare earths for her own customers. There is no evidence that she is presently involved in competing with the plaintiff in respect to any of the plaintiff's supply contracts which existed while the defendant was in its employ.
Thus, there is no present conduct of the defendant which can be properly enjoined by a temporary injunction. It is neither clear that the plaintiff will prevail upon the merits after full trial, nor is there irreparable injury to the plaintiff arising out of the defendant's violation of any duty owed to the plaintiff. Neither is there evidence that any injury is eminent. See Karls v.Alexandra Realty Corporation, 179 Conn. 390, 401, 402, 426 A.2d 784
(1980).
Accordingly, the plaintiff's application for a temporary injunction is denied.
So Ordered.
D'ANDREA, J.