[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MARCH 27, 1997
The above-captioned case came before this court on the plaintiff's application for a preliminary injunction. The defendant has not contested the plaintiff's right to seek such relief despite the existence of a contractual agreement to arbitrate disputes, pursuant to Conn. Gen. Stat. § 52-522; however, the defendant disputes the merits of the plaintiff's claim and disputes whether the plaintiff has met the standard for preliminary injunctive relief pending the outcome of the arbitration. CT Page 2641
In its application and amended complaint, the plaintiff asserts that it hired the defendant firm as the architect for an assisted living facility in Woodbridge and that the defendant has recently contracted with another developer to serve as the architect for another assisted living development in the same town. The plaintiff alleges that the defendant's simultaneous provision of services to itself and to a rival developer violates implied contractual agreements to abide by ethical standards and to deal fairly with the plaintiff. The plaintiff also claims a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110 et seq.
In order to obtain temporary injunctive relief, a party must establish a reasonable degree of probability that it will ultimately prevail on the merits and that denial of such relief may result in greater harm to the plaintiff than will result to the defendant from granting relief. Griffin Hospital v.Commission on Hospital and Health Care, 196 Conn. 451, 457
(1985), citing Olcott v. Pendleton, 128 Conn. 292, 295 (1941).
The plaintiff presented evidence that its principal, David Reis, was engaged in the business of developing assisted care facilities in Connecticut. Such facilities are not nursing homes but residential complexes in which elderly people who need some assistance with some aspects of daily life have access to some on-site medical care and other services. Such developments have been in progress in Connecticut only since 1994, due to new state regulations passed at that time, and there has been competition in Connecticut to respond to the need for such facilities. When the plaintiff decided to propose a 90-unit facility in Woodbridge, Mr. Reis hired the defendant, which he knew specialized in designing such projects. At the time the plaintiff hired the defendant, the plaintiff knew that the defendant had been the architect for assisted living prototypes developed by Marriott Corporation and had seen architects' renderings of a Marriott prototype. While the defendant was engaged in Marriott developments of assisted care units elsewhere, including Greenwich and Stamford, Marriott had no such projects planned for Woodbridge or its immediate environs at the time the plaintiff engaged the defendant. The agreement between the parties does not contain any provision limiting the defendant from performing services for other developers. Since Marriott was a prior, major client of the defendant, it appears that the defendant would not have agreed to such a limitation on its other activities. CT Page 2642
The defendant prepared plans and assisted the plaintiff in presentations to the town zoning officials. The defendant has completed all architectural drawings for the plaintiff's facility, which is to be known as Woodbridge Care. Ground was broken for the facility on March 10, 1997, and the defendant has contracted to act as the architect during construction and to inspect the contractor's work for compliance to the plans.
While the plaintiff was proceeding on its plan for Woodbridge Care, a rival developer, a Mr. Resnickoff, was pursuing approval of an assisted care facility also to be built in Woodbridge. Mr. Reis was monitoring the progress of the Resnickoff project and attended a meeting of the Planning and Zoning Commission of the town of Woodbridge at which Mr. Resnickoff proposed modification of a plan he had previously submitted. Shortly thereafter, Mr. Reis became aware that the land where the Resnickoff project was to be built had been bought by Marriott Corporation, and he further learned from someone in the Resnickoff operation that Marriott would be taking over the development and that Marriott had engaged the defendant to be the architect for the project.
Mr. Reis called Charles Griffin, the architect in the defendant firm who had headed the Woodbridge Care team, and received oral confirmation that the rumor was correct. Mr. Griffin testified that the defendant entered into a contract with Marriott in January to render architectural services with regard to Marriott's project, performing the same services as the defendant was performing for the plaintiff on its project.
The defendant neither sought the plaintiff's approval nor concealed its relationship with Marriott, however, Mr. Reis took the matter up with Mr. Griffin before Mr. Griffin had notified the plaintiff about the Marriott contract in Woodbridge.
The plaintiff seeks injunctive relief in the form of orders a) requiring the defendant to sever its relationship with Marriott as to the development of an assisted living facility in Woodbridge, and b) prohibiting the defendant from disclosing or otherwise using confidential information concerning the plaintiff's project for the benefit of Marriott.
The plaintiff's amended complaint contains two counts. In the first count, the plaintiff alleges that the defendant's simultaneous engagement by developers pursuing similar projects in the same town constitutes a violation of § 20-289-10a(2)(b) CT Page 2643 of the Regulations of State Agencies and the code of ethics promulgated by the American Institute of Architects. The plaintiff also asserts in this count that the defendant's contract with Marriott is unenforceable because the defendant is not authorized to do business in Connecticut. In the second count, the plaintiff alleges that the defendant is violating CUTPA by failing to disclose its relationship with Marriott, by failing to drop the Marriott Woodbridge project when asked to do so by the plaintiff, by using confidential information of the plaintiff to aid its other client, and by compromising its interest in maintaining the confidentiality of its work on the plaintiff's project.
This court finds that the plaintiff has failed to establish a reasonable degree of probability that it will ultimately prevail on the merits of any of its claims.
1. Unenforceability of Marriott Contract
The plaintiff asserts as part of its first count that the defendant should be enjoined from performing services for Marriott because the defendant is not authorized to do business in Connecticut. The plaintiff is obviously not a party to that contract, and the plaintiff raises no claim concerning the enforceability of its own contract with the defendant. Since the plaintiff has no interest in the cause of any action or legal or equitable right, title or interest in the contract between the defendant and Marriott, it plainly lacks standing to raise any claims with regard to the enforceability or validity of that contract. Tomlinson v. Board of Education, 226 Conn. 704, 717
(1993); Coburn v. Lenox Homes, Inc., 173 Conn. 567, 570 (1977).
Violation of AIA Code of Ethics
The defendant asserts that the canons of the American Institute of Architects provide the plaintiff only with a source of disciplinary sanctions but not with a civil cause of action. The plaintiff has presented no authority for its claim that a breach of a professional ethical code constitutes a cause of action. The Appellate Court has held repeatedly, in a closely analogous context, that the Rules of Professional Conduct that apply to attorneys do not of themselves give rise to a cause of action against an attorney alleged to have violated them.Leavenworth v. Mathes, 38 Conn. App. 476 (1995); Noble v.Marshall, 23 Conn. App. 227 (1990). CT Page 2644
The AIA Code of Ethics, like the Rules of Professional Conduct for attorneys, states that the Code's provisions are meant to constitute standards for imposition of disciplinary standards within the profession: they are "broad principles of conduct" and "goals toward which members should aspire in professional performance and behavior." The preamble to the AIA Code indicates that violation of the rules of conduct is mandatory "the violation of which is grounds for disciplinary action by the Institute" (Ex. C), not that they give rise to civil liability.
This court concludes that while violation of the AIA Code of Ethics may subject an architect or a firm to disciplinary sanctions by the profession, the Code does not create a cause of action upon which a civil remedy may be based, and the plaintiff has therefore failed to prove a likelihood of success on the merits of that claim.
State Regulation
In its amended complaint, the plaintiff appeared to rely on the provisions of Conn. Agencies Regs. § 20-289-10a(2)(b) as giving rise to a cause of action. That regulation provides as follows:
 If an architect has any business association or direct or indirect financial interest which may influence his judgment in connection with the provision of professional services, the architect shall fully disclose in writing to the client(s) or employer(s) the nature of the business association or financial interest, and if the client(s) or employer(s) object to such association or financial interest, the architect will either terminate such association or interest, or offer to give up the commission of employment.
In its post-hearing brief, the plaintiff appears to have abandoned the claim that the cited regulation gives rise to a cause of action and instead involves it only as a means of satisfying the element of the "cigarette rule" of CUTPA that requires a plaintiff to show that a challenged business practice constitutes "a breach of established concepts of fairness."Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 107
CT Page 2645 (1992). See Federal Trade Commission v. Sperry Hutchinson Co.,
405 Conn. U.S. 233 (1972). Accordingly, this court will not analyze the likelihood of the plaintiff's success on the merits of a claim that the cited regulation furnishes an enforceable cause of action, but only as an element as to the second count of the complaint, which alleges a CUTPA violation.
CUTPA Claim
The Connecticut Unfair Trade Practices Act provides at Conn. Gen. Stat. § 42-110b(a) that "[n]o person shall engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." A practice is "unfair" if 1) without having necessarily been previously considered unlawful, it offends public policy as it has been established by statutes, the common law, or otherwise — whether it is at least within the penumbra of some common law, statutory, or other established concept of unfairness; 2) it is immoral, unethical, oppressive or unscrupulous, and 3) if it causes substantial injury to consumers. William Ford, Inc. v. Hartford Courant Co.,232 Conn. 589, 591-92 (1995), citing Conway v. Prestia, 191 Conn. 484,492-93 (1983).
The "practice" or "act" that the plaintiff claims to be unfair is the defendant's provision of professional services to its longstanding client, Marriott, at the same time as it is supervising the contractor's compliance with its architectural drawings on behalf of the plaintiff as to a similar project in the same town. Additionally, the plaintiff claims that it is a CUTPA violation for the defendant to use information acquired in the plaintiff's project for the benefit of Marriott. As to this second claim, the plaintiff has provided no evidence of any actual use of any confidential information. As Mr. Griffin pointed out, much of the plaintiff's project was made public at zoning hearings and by required public filings. The evidence was to the effect that Marriott builds in various locations versions of a prototype assisted living facility that the defendant completed before the plaintiff even became its client; and, indeed, that the plaintiff was shown this prototype in the usual way that architects display prior projects to establish their familiarity with particular kinds of projects.
There was no evidence to the effect that the defendant knew at the time it contracted with the plaintiff that Marriott would be hiring it to build the same kind of facility in the same town, CT Page 2646 so there was nothing to disclose at the time the defendant contracted with the plaintiff. Within the terms of the regulation cited by the plaintiff, the defendant disclosed its prior business relationship with Marriott and disclosed that Marriott was engaged in developing assisted care facilities in many locations. It has not been shown that the defendant has any interest in the Marriott project in Woodbridge other than the business relationship of having been hired to perform architectural services for a fee.
The business relationship of which the plaintiff complains, that is, the engagement to work on Marriott's Woodbridge assisted living facility, did not arise until after the plaintiff had received local approval for his own project. The court finds that the defendant may not have acted with great speed in advising the plaintiff of its new engagement, but that it did not try to conceal it and responded fully about it when the plaintiff asked it to confirm rumors.
The regulation on which the plaintiff depends as a standard of unfairness states a duty to disclose potential conflicts and to offer to release a client from a contract in order to avoid such conflict. The plaintiff interprets this standard as requiring the defendant to drop Marriott as a client; however, the provision also contemplates that the architect could release the plaintiff from its obligation to continue to use its services. Though the plaintiff asserts that the latter cure would cause it extra expense and inconvenience in bringing in a substitute architect for the construction phase, the court finds credible Mr. Griffin's testimony that such transitions are not difficult to accomplish, and that requirements that the architect certify that the building conforms to the plan can be satisfied by a new architect after proper review of the plan.
At any rate, the harm of which the plaintiff complains in seeking injunctive relief is a fear of future breach of confidentiality. Most features of the plaintiff's project are ascertainable from the public record following site plan approvals and required filings. The plaintiff did not substantiate its fears of misuse by the defendant of unspecified other information.
It has long been held that injunctive relief will not be awarded where the request for such relief is predicated only on the fears and apprehensions of the party applying for it and CT Page 2647 where it would be incompatible with the equities of the case.Karls v. Alexandra Realty Corp., 179 Conn. 390, 401 (1980);DeCecco v. Beach, 174 Conn. 29, 35 (1977); Moore v. Serafin,163 Conn. 1, 11 (1972); Nicholson v. Connecticut Half-Way House,Inc., 153 Conn. 507, 511 (1966). The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm. Moore v. Serafin, supra; Scoville v. Ronalter, 162 Conn. 67
(1971).
The plaintiff never proposed to the defendant that the contract between them contain an exclusivity clause. Since the defendant's specialty is designing assisted living complexes, Mr. Griffin credibly testified that the defendant would not have agreed to such a clause, since the plaintiff's project was not such an attractive commission that it warranted an agreement not to work for any other developer building a similar project in the same market area. This court does not find that it is an unfair trade practice for an architect who has not contracted to work exclusively on one client's project in an area to accept other work, especially when the architect is willing to withdraw after completing the plaintiff's design and plans in order to allay the plaintiff's fears.
Even if the defendant's accepting work for two clients building similar projects in the same town were seen as a CUTPA violation, the plaintiff has not shown that there is a substantial likelihood that it will suffer irreparable harm.
The application for a preliminary injunction pending the final resolution of the disputes at arbitration is denied.
HODGSON, J.